# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## Nelson v. Commonwealth.

(Decided February 8, 1924.)

### Appeal from Martin Circuit Court.

1. Judges—Motion Held Not to State Grounds Requiring Vacation of Bench.—Presiding judge did not err in overruling a motion to vacate the bench because he was in favor of a political faction antagonistic to the defendant and had political bias and enmity toward him, and had been in conference with the Commonwealth's attorney relative to the case, and, after the indictment had been returned, set aside a prior order admitting defendant to bail in the sum of $15,000.00, and procured his re-arrest, and denied him bail in any sum.

2. Judges—Affidavit in Language of Statute for Vacation of Bench Insufficient.—An affidavit, in support of motion to judge to vacate bench, in the language of Ky. Stats., section 968, is not sufficient for that purpose, but must set forth the facts.

3. Judges—Affidavit for Vacation of Bench Held Insufficient.—Affidavit "that the court has openly stated his belief in the guilt of defendant, and by his acts and conduct has given the impression in the presence of the jurors, some of whom will be called upon to try him of the guilt of this defendant," in support of motion to vacate bench under Ky. Stats., section 968, was insufficient; the mere fact of entertaining such an opinion not being sufficient of itself to require a presiding judge to vacate the bench, and there being no facts stated to show how he expressed his opinion to others.

4. Judges—Motion to Vacate Bench Determined Upon Statements in Affidavit.—A motion to judge to vacate bench must be determined upon the statements as made in the affidavit filed in support thereof, since it is not within the province of the court to inquire into their truth or falsity.

5. Criminal Law—Objection to Evidence at Trial Necessary.—Complaint cannot be made upon appeal that court erred in admitting evidence, in the absence of an objection thereto.

6. Criminal Law—Exclusion of Evidence Held Not Prejudicial.—Exclusion of letters to contradict a witness was not prejudicial, where the witness admitted in her testimony all of the contradictory matter contained in the letters.

J. B. CLARK for appellant.

THOMAS B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On December 10, 1922, appellant, Gold Nelson, shot and killed Bill Stone in a public road on Emily fork of Wolf creek in Martin county. He was indicted by the grand jury of the county charged with murder and on his trial was convicted of voluntary manslaughter and sentenced to serve a term of twenty-one years in the penitentiary. His motion for a new trial was overruled, and from the judgment pronounced on the verdict he prosecutes this appeal. Numerous alleged errors are contained in the motion, but many of them are abandoned on this appeal and we are convinced from the record that they and others are wholly without merit, and in this opinion we will discuss only those which we deem of sufficient importance to require it. Before directing attention to any of them, we deem it proper at this point to say that the evidence for the Commonwealth proved defendant guilty of a most brutal and malicious murder, while defendant and some of his witnesses established by their testimony a case of self-defense, although the developed circumstances and facts surrounding the parties at the time are not corroborative of their testimony, but on the contrary to our minds, greatly weaken it.

Briefly stated, the testimony for the Commonwealth relating to the immediate time of and just preceding the homicide, was, that defendant and deceased were at the residence of James Fields, who lived on the road some fifty or seventy-five yards from where the killing occur-

red. Defendant the night before and for some time past had been staying at the home of Fields, and on that morning he went up the branch to the residence of deceased for the purpose of having a two dollar bill changed. He procured the change and he and deceased started down the branch toward the residence of Fields, where they soon arrived, and defendant took a drink and exhibited a pistol and threatened to kill deceased, and the latter left the house unarmed and started in the direction of his residence, when he was followed by defendant, who overtook him and shot him to death without provocation. Defendant and his witnesses, one of whom was his brother, testified that he had stopped at the latter's house to get some corn to feed a horse and was returning with it in his arms when he met deceased with a rifle and the latter shot at him, the bullet passing through his coat sleeve, and deceased was threatening to shoot a second time when he fired the fatal shots in his necessary self-defense. He claims that on that occasion two persons went with him to the house of deceased, one of whom he knew, but he did not give their names nor did he introduce or offer to introduce either of them at his trial. There was no corn found by any one of the many persons who soon collected at the place of the shooting and where the body of the deceased was lying in or at the side of the road. Neither did he produce his coat at the trial showing the hole made in it by the shot fired by the deceased, as he claimed. We mention those facts as but illustrative instances of many others tending to weaken the alleged self-defense theory. It will also be proper to state that two of the chief witnesses for the Commonwealth, Mr. and Mrs. Fields, were shown to have made contradictory statements and their characters for truth and veracity were likewise impeached. There was also the latter character of testimony directed to defendant and his witnesses, but the young daughter of Mr. and Mrs. Fields was not contradicted in any manner, and upon the whole the testimony was amply sufficient to sustain the verdict; and with this brief reference to the testimony we will proceed to a discussion of some of the grounds which we conceive are deserving of consideration.

It is first insisted that the presiding judge of the court should have sustained the motion made by defendant and supported by affidavit to require him to vacate

the bench.   A number of alleged disqualifying facts are
stated in defendant's affidavit, which, were we to discuss
*seriatim* would lengthen this opinion beyond due propor-
tions, and would serve no useful purpose, since this and
other courts have uniformly held them insufficient to dis-
qualify the judge from presiding at the trial.   Some of
them, are recitations of former rulings of the court
which are not shown to have emanated from any ill-will
toward defendant or corrupt motive of the judge, nor to
have been induced because of any bias or prejudice
against defendant. Another one was ''Because the judge
of this court is in favor of a political faction which is
politically antagonistic to this defendant, and has politi-
cal bias and enmity towards him;'' while another was
that the judge had been in conference with the Common-
wealth's attorney relative to the case, and, still another,
that the judge, after the murder indictment was re-
turned, set aside a prior order admitting defendant to
bail in the sum of $15,000.00 and procured his re-arrest
and denied him bail in any sum.   Excepting the last one
mentioned, this court has frequently had before it the
other two recited reasons and in every instance held them
insufficient, and we deem it unnecessary to insert the
cases so holding since it is manifest that if the alleged
political reason, or the consultation by the judge with
the Commonwealth's attorney, were either of them suf-
ficient to require a vacation of the bench, then every de-
fendant arraigned in court could in many instances re-
move the presiding judge, for it is quite frequently the
case that the latter is of a different political faith from
the defendant on trial; and most every presiding judge,
especially the more efficient ones, consults with his prose-
cuting attorney with reference to the enforcement of the
criminal law in his court; and if such consultation goes
no further, or seeks to accomplish no more than the just
enforcement of the laws, it is a course to be commended
rather than condemned.   Neither should the judge be re-
quired to vacate the bench because, forsooth, subsequent
developments make a *prima facie* non-bailable case, and
he thereafter conforms his orders to the established
practice in such cases.   There is no showing in the re-
cord of any legal bias or prejudice on the part of the cir-
cuit judge growing out of any of the matters thus far
mentinoed, and we will proceed to a discussion of the
only one contained in the affidavit possessing, according
to our conclusion, any possible showing of merit.   It is

that "the court has openly stated his belief in the guilt of the defendant and by his acts and conduct has given the impression out in the presence of the jurors, some of whom will be called upon to try him of the guilt of this defendant."

At this point it might be appropriate to say that in applying the provisions of section 968 of the statute, which is the one authorizing a defendant in certain cases to require the presiding judge to vacate the bench, this court in a long list of cases has held that an affidavit in the language of the statute was not sufficient for that purpose, since it was held that the facts upon which the affiant believes that the presiding judge "will not afford him a fair and impartial trial, or will not impartially decide an application for change of venue," must be set forth so that it may be judicially determined whether legal disqualifications exist or not, and if they are insufficiently stated the application should be denied. The most recent case from this court, in which many others are cited, and in which it was held that the *facts* and not the *statutory language* must be incorporated in the affidavit, is that of Stamp v. Commonwealth, 195 Ky. 404; and in that case, as well as the others incorporated in that opinion, it was held that "The words 'bias,' 'prejudice' and 'hostility' as here used refer, of course, to the mental attitude or disposition of the judge toward the appellant, and not to any views he may entertain respecting the crime with which the latter was charged." There is nothing in that portion of the affidavit now under consideration showing any personal bias, prejudice, hostility or ill-will toward the defendant, nor any mental corrupt attitude towards him. It contains only a statement, in substance, that the presiding judge from the information he had obtained was under the impression that defendant was guilty of the crime with which he was charged, and we fail to see wherein such a created impression *alone* would afford a just ground for the existence of hostility, bias or prejudice on the part of the judge against the accused, since it would be a stupid person indeed who would not entertain some notion regarding the guilt or innocence of one from the facts possessed by the one entertaining the notion. It is a characteristic of the human mind to form such opinions and it is doubtful if one who would not do so would be qualified to fill the responsible office of circuit judge. In

other words, we mean to say that the bare fact of entertaining an opinion, arising from the facts possessed, is no evidence whatever of personal hostility, or ill-will towards, or bias or prejudice against, the one concerning whom the opinion is entertained.　Indeed it is by no means inconsistent that the one who entertains such an opinion might be on the friendliest of terms with one concerning whom they were entertained, and indeed in great sympathy with him.　We, therefore, conclude that the mere fact of entertaining such an opinion is not sufficient of itself to require the presiding judge to vacate the bench and it was so stated in the Stamp case, *supra,* and others referred to therein, one of which is that of Chreste v. Commonwealth, 178 Ky. 311, wherein a lengthy discussion of the application of the section of the statute *supra* is contained.

As said in the case of May v. May, 150 Ky. 522, ''A judge of a court is human and like every other man must have his likes and dislikes, must find in the members of the bar characteristics and qualities which he likes or dislikes, of which he approves or disapproves.　Insofar as he is not swayed by these natural emotions to do any man an injustice, the fact that he has them in common with his brother man does not disqualify him from trying a case.''　In that case the ground relied on to sustain the motion was that the trial judge was unfriendly to applicant's attorney, and the court in denying the sufficiency of the ground used the language quoted.　In the case of State v. Morrison, 67 Kan. 144, 72 Pac. 544, in dealing with the question of an entertained opinion by the court of the defendant's guilt of the crime with which he was charged, and in denying the sufficiency of that fact to require a vacating of the bench, the court said:

''The belief or disbelief of a trial judge in the guilt of a defendant put upon trial before him is not a test of his qualification to preside at such trial.　A trial judge may be convinced from his personal knowledge of the case, or what he has heard from others, of the guilt of one put upon trial before him, and yet with the utmost fairness and impartiality conduct the trial and give the defendant a fair and impartial hearing.　It is the existence of prejudice or bias in the mind of the trial court against defendant, which must be clearly shown in support of an

application for a change of venue from the court presided over by such judge, not the belief of the judge in the guilt of defendant.''

That quotation is found in the note to Ingles v. McMillan, reported in 45 L. R. A. (N. S.) 511, and the annotator adds:

"So, it may be stated as a general rule, supported by Ingles v. McMillan, and by practically all the cases hereinafter cited, that mere belief alone in the guilt of an accused does not disqualify a judge to sit at his trial.''

But it is insisted that while that may be true, yet if the judge expresses that opinion to others he then becomes disqualified and should not preside at the trial. In answering that contention it may be said first, that the affidavit of defendant does not disclose to whom or the circumstances under which the presiding judge gave expression to any such belief. It is not disclosed that he did so in such a manner and under such circumstances as to create public opinion against him, or whether it was done publicly or privately. In the case of Heflin v. State, 88 Ga. 151, 30 Am. St. Rep. 147, 14 S. E. 112, the accused was indicted for perjury and the presiding judge also presided at the trial in which the alleged perjury was charged to have been committed. He, of course, entertained a belief as to the defendant's guilt or innocence of perjury, and it appears that he advised his counsel to enter a plea of guilty; and the court held that such belief of and advice by the presiding judge, in the absence of other facts showing actual bias and prejudice, were insufficient to deprive him of the right to preside at the trial. In the cases of Drechsel v. State (Texas), 39 S. W. 678; State v. Blount, 124 La. 202, 50 So. 12; State v. Bohan, 19 Kan. 28, and People v. Williams, 24 Cal. 311, the presiding judge had both formed and expressed an opinion as to the defendant's guilt, and it did not appear that he had given such expression in such a manner or under such circumstances as to indicate an adverse mental attitude toward the defendant and for that reason the application was denied.

We do not overlook the fact that all litigants and defendants under criminal charges are entitled to have their cases tried by an impartial tribunal. But, it is not every formed or expressed opinion that amounts to

partiality, bias or hostility on the part of the presiding judge so as to deprive the applicant of the character of trial indicated. Under our practice, as adjudged in the cases *supra,* the motion must be determined upon the statements as made in the affidavit, since it is not within the province of the court to inquire into their truth or falsity. That rule of practice arms the applicant with considerable power and it is nothing but proper that he should make such a showing as on its face clearly establishes the fact that the mind of the presiding judge is so contaminated with hostility, bias and prejudice against him as to prevent him from having a fair trial. We do not think the affidavit in this case measures up to that requirement, and it follows that the court did not err in overruling the motion to vacate the bench.

It is also complained that the court erred in admitting before the jury the clothing worn by the deceased at the time he was shot, upon the ground that they were not sufficiently identified. In the first place, we find no objection to that testimony, but if there had been then the evidence identifies the clothing possibly as accurately as human testimony could do it, and we find nothing in this objection.

It is next insisted that certain letters written to defendant by the Commonwealth's witness, Mrs. J. H. Fields, were improperly excluded from the jury. The letters were objected to as a whole and the contents of many of them were not relevant upon any issue in the case, either direct or collateral. They were offered for the contradicting effect, if any, they might have upon the testimony of the writer, but she admitted in her testimony all of the contradictory matter contained in the letters, and, as we have heretofore stated, she was impeached by proof of contradictory statements as well as reputation for truth and veracity; and if, forsooth, any portions of the letters were technically competent, we are convinced that the exclusion of them were not prejudicial to the substantial rights of the defendant.

Upon the whole case, we are convinced that the defendant had a fair and impartial trial, and likewise convinced that his punishment can by no means be considered as severe. Wherefore, the judgment is affirmed.