## Siler v. Brown.

(Decided June 18, 1926.)

### Appeal from Whitley Circuit Court.

1. Elections—Striking Amended Petition and Answer, Not Timely Filed, was Proper, so far as they Asserted New Grounds of Contest, but was Error to Extent that they Merely Made Grounds Originally Charged More Specific.—In election contest, amended petition and answer, filed after time for filing grounds of contest and counter contest, were properly stricken, so far as asserting new grounds of contest, but court erred in striking them to ex-

tent that they merely made more specific grounds charged in original petition and answer.

2. Elections—Petition, Alleging that Votes for Contestant were Not Counted and Certified for Him, and that Recount Will Show Many More Votes for Him than Were Certified, Held Sufficient to Require Recount.—Petition alleging that, by mistake or fraud, votes for contestant in certain precincts were erroneously counted and certified for contestee, and that recount will show that contestant received many more votes than were certified for him and majority of all legal votes cast, held sufficient to require recount.

3. Elections—Contestant Need Not State Contest Grounds with Precision of Pleading in Civil Action; Certainty to Common Intent Being Sufficient.—Contestant need not set forth contest grounds with precision of pleading in civil action; certainty to common intent being sufficient, and technical objectons disregarded.

4. Elections—Appellate Court Cannot Presume that Lower Court, Recounting Votes in Some Precincts After Sustaining Demurrer to Petition for Recount in Those and Other Precincts, Reconsidered Ruling.—Court of Appeals cannot presume that lower court, who recounted votes in certain precincts after sustaining demurrer to paragraph of contest petition asking recount in those and other precincts, reconsidered ruling on demurrer.

5. Elections.—Where there was no pleading authorizing court to recount votes, Court of Appeals must treat recount as nullity and assume that vote was as certified by election officers.

6. Depositions—Depositions as to Open Voting, First Charged by Pleadings Not Timely Filed, were Properly Stricken.—In election contest, depositions as to open voting in certain precincts. which was first charged by pleadings not timely filed, were properly stricken.

7. Elections—"Twenty Days Thereafter" for Completing Contestee's Proof Means 20 Days from Last Day Contestant Could Take Proof (Ky. Stats.; Section 1596a-12).—"Twenty days thereafter," in Ky. Stats., section 1596a-12, as to time for completing contestee's proof, means from last day contestant could take proof, not from time he completed proof.

8. Elections—Court should Uphold Validity of Election and Throw Out no Precincts, where Results of Fraud, etc., May be Eliminated, and Result Between Legal Voters Clearly Ascertained.—If reasonably possible, court should uphold validity of election and not throw out any precincts, where results of fraud, bribery, etc., may be eliminated, and result clearly ascertained between legal voters, by eliminating illegal votes.

9. Elections—Petition Charging that Illegal Votes were Counted and Certified in Certain Precincts, Making it Impossible to Ascertain Number of Legal Votes Cast, Defectively Stated Grounds, and should have been Made More Specific by Amended Petition.— Petition charging that votes of minors and nonresidents of precinct or state for required time were counted and certified in certain precincts, making it impossible to ascertain number of

legal votes cast, defectively stated such grounds of contest, and should have been made more specific by amended petition, had contestee so moved.

10. Elections—Parties May Prepare and Try Contest Under Petition Charging Grounds of Contest Indefinitely, in Absence of Motion by Contestee to Require Contestant to Make it More Specific.—Parties to eelction contest may prepare and try case under petition indefinitely stating grounds of contest that illegal votes were cast, if contestee makes no motion to require contestant to make pleading more specific.

11. Elections—One Renting Out House, to which She Expected to Return While Residing in Another County and State, from which She Returned 11 Months Before Election to Precinct in which House was Located and She Formerly Lived, could Vote Therein.—One expecting to return to and make her home in house, owned and rented out by her, while residing in another county and state, from which she returned about 11 months before election to precinct in which house was located and she formerly lived, could vote in such precinct.

12. Elections.—Persons moving from precinct about a month before election could not vote therein.

13. Evidence.—Generally, disfranchisement of ex-convict is presumed to continue until shown to have been removed by production of pardon.

14. Elections—One who had only begun moving from precinct on election day could vote therein.

15. Elections.—Persons having most of their household goods in house in precinct, to which they always intended to return and had returned at time of election, could vote therein.

16. Elections—In Absence of Proof or Contention in Brief that Parties were not Legal Voters, or Proof of How They Voted, Question of Legality of Their Votes Must be Treated as Waived.—In absence of proof or contention in contestee's brief that certain parties were not legal voters or evidence of how they voted, question of legality of their votes must be treated as waived, and parties treated as legal voters.

17. Elections—Contestee Not Charging Open Voting in Original Answer Cannot Benefit Thereby on Appeal.—Contestee not charging open voting at certain precincts in original answer cannot benefit by such contention on appeal; such charge in amended answer, filed after time for filing grounds of countercontest, being equivalent to new ground of contest.

18. Elections.—Votes of minors and residents of precinct and state for less than 60 days and one year, respectively, cannot be counted.

19. Elections.—Votes of persons voting openly cannot be counted.

20. Elections—Persons Living and Voting in Precinct for 30 Years, and Intending to Make Home Therein While Living in Another State, Could Vote Therein, Though Returning to State Within Year Before Election.—Persons living and voting in precinct for

30 years, ánd always intending to make their home therein while residing in another state, where they never voted, could vote therein, though they returned to state within year before election.

21. Elections.—Contestee does not lose illegal votes cast at precinct, vote in which was not attacked in contestant's original petition.

22. Elections.—Parties moving to another state, where they made a crop over year before election, and not returning until about 3 months before, could not vote.

23. Elections.—Votes of persons receiving ballots in name of resident voters, who did not go to polls, are illegal.

24. Elections—Husband and Wife Returning to State About 3 Months Before Election from Another State, in which he Engaged in Business, could Not Vote.—Husband and wife going to another state, where he engaged in business, about 8 months before election, and returning to state about 3 months before election, could not vote.

25. Election—Husband and Wife Returning to Precinct Less than 60 Days Before Election from where they Lived About 8 months could Not Vote.—Husband and wife, returning to precinct, where they had formerly lived, less than 60 days before election, from place where they had lived about 8 months and husband had voted, could not vote.

26. Elections—Contestant, Charging that Certain Votes were Illegal and Producing Evidence that no One in Small Precinct Knew Persons of Names Given by Voters, Placed Burden on Contestee to Show Their Existence and Right to Vote.—Where contestant charged in petition that certain votes were illegal, and produced evidence that no one in precinct, where only 135 votes were cast, knew persons of names given by voters, burden shifted to contestee to show that they existed and had right to vote.

27. Elections.—Voters' depositions as to how they voted should not be received in election contest.

HENRY C. GILLIS and B. B. SNYDER for appellant.

W. R. HENRY and R. L. POPE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Siler contested the election of Brown as member of the board of education for the fifth educational division of Whitley county. He was unsuccessful and has appealed. These men were candidates of different factions of the Republican party, for this office at the November election, 1925. The election returns showed that Brown received 679 votes and Siler 671. Accordingly, Brown received the certificate of election on November 6, and on November 14, Siler filed in the office of the clerk of the Whitley circuit court, a petition contesting Brown's

election. Process was served on Brown on November 20, and he filed his answer on December 2, to which Siler filed reply on December 5, thus completing the issues. By this petition Siler contests the election of Brown upon the following grounds:

First, that Brown did not receive the highest number of votes legally cast at the election, and that contestant did receive the highest number of legal votes. Second, that Brown at the time of the election did not have, and does not now possess the qualifications required of a candidate for said office, because he was not, and had not been, for one year next preceding the election, a resident of educational division No. 5. His third ground was:

"That in each of the following named voti-precincts in said educational division No. 5, to-v Proctor, Mt. Ash, Jellico, Kensee and Saxton, election officers by mistake, oversight, or fraud, err neously counted and certified for contestee votes which were cast for contestant and which should have been counted and certified for contestant, and in each of said election precincts, the election officers by mistake, oversight or fraud failed to count and certify for contestant a large number of votes which were cast for contestant, and contestant says that upon a recount of the votes cast in each of said voting precincts, it will appear that contestant received and there were cast for him a much larger number of votes than were certified by said election officers as having been cast for contestant, and such recount will show that contestant received a larger majority of all the legal votes cast for said office in said election."

Fourth, that the following persons (naming them) and many other persons whose names are unknown to the contestant at this time, voted for Brown at the said election at the Mt. Ash precinct whose votes were counted for Brown and against Siler. Siler says that of these, Ed Hays, Myrtle Brown and Nona Petrey were less than 21 years of age; that Nannie Jones had been adjudged insane and that the others named by him were nonresidents, and not entitled to vote in that precinct, and that a large number of votes were cast openly on the table in the presence and view of the election officers and none of the voters who so voted openly were sworn to the effect that he was blind, physically disabled or unable to read;

that a large number of voters were bribed and caused to vote as they did by intimidation, threats and fraud, and that a large number of voters who were under 21 years of age, and who had not resided in the precinct 60 days or in the state one year, were permitted to vote and their votes were counted and certified by the election officers, and for these things he contested the vote of this precinct, and sought to have the precinct thrown out. Fifth, that the following persons (naming them) had voted, and their votes had been counted for Brown at the Proctor voting precinct, and that of these, Goldie Brown was less than 21 years of age; that she voted for her father, S. S. Brown; that Alice Brown voted openly on the table in the presence of a number of other persons who saw how and for whom she voted, and that she voted for Brown, and he made the same general charge about open voting and illegal voting in this precinct as that made in Mt. Ash. Sixth, that in Kensee voting precinct, votes were cast in the names of John Lee, Elizabeth Lawson and Martha Isaacs, although none of said parties came to the polls in that precinct; that these three votes were counted for Brown and that they were illegal votes; that Rose Meadors was permitted to vote, and her vote was counted for Brown; that she was not 21 years of age; that William Perkins, an adherent and worker for Brown, brought a large number of women to the voting place, and went into the voting booth with each of such women and was present and saw how each of them voted in the race for member of the board of education, and that all of said women voted for Brown, and their votes were so counted; and he made the same general charge about open voting and illegal voting at this precinct as that made at Mt. Ash. Seventh, that at Pleasant View precinct, John Reed, Mrs. John Reed, Susan Troutman each voted for Brown and that none of them was a resident of said voting precinct and had not been for 60 days next preceding the election.

In his answer, Brown first denied the allegations of the petition; next he charged that at Jellico precinct, 24 persons whose names he gave, voted for Siler and their votes were counted for Siler, and that none of these persons was a legal voter, and that all of them were, except J. F. Gray, nonresidents of the state of Kentucky, and that Gray had not been a resident of the voting precinct for 60 days next preceding the election; that Belle Davis, Kensee Fuson, and Mrs. George Fuson were not allowed

to vote and that each of them was a legal voter, and entitled to vote, and would have voted for Brown if permitted to do so, and he charged that at this precinct a large number of voters voted openly in the presence and view of the election officers, and that none of said persons was sworn to the effect that he or she was blind, physically disabled or unable to read; that these illegal votes were counted for Siler. Brown charged that at Boston precinct, Allen Fox, Marion Trammel, Relda Trammel, Alma Trammel, Bill Hammil and Jenny Hammil were permitted to vote and that none of them was a legal voter, and that they were all nonresidents of Kentucky, except Allen Fox, and that he had been convicted of a felony, and had not been pardoned, and at this precinct he made the same general charge of open voting as that made at Jellico. He charged that at Cane Creek voting precinct, J. S. Holt, John W. Smith, Mrs. Oma Smith, Mrs. Cordia Veatch, Verchial Lawson and Mrs. Nannie Young, voted for Siler and that none of them was a legal voter in the precinct and all of them were nonresidents of the voting precinct, except Mrs. Veatch and Verchial Lawson, and that they were each less than 21 years of age; that at Savoy precinct, Sarah Steeley, May Steeley, Bert Alder, Ex Alder, Mrs. Sam Luster, Sam Luster, Kizzie Steeley, Siler Lawson, E. H. Griffin, Neal Rains and Mrs. Neal Rains, had been permitted to and did vote for Siler, and that none of them was a resident of the voting precinct, except Sarah Steeley, and she had been convicted of a felony and had not been pardoned; that at Saxton precinct, G. S. Smith, Laura Bennet and Mrs. J. L. Lawson had been permitted to vote for Siler and that none of these persons was a resident of the precinct, and that Mrs. Lawson was not present at the voting precinct, and that her vote was cast by some one in her stead; that at Emlyn voting precinct, Perry Wells, Francis Wells, John A. Baird and Cora Bowlin had been permitted to vote for Siler, that their votes had been so counted and that none of them was a resident of that voting precinct; that at Wolf Creek voting precinct, Alifair Moses, Ancil Moses and Nannie Caddell had been permitted to vote for Siler, and their votes counted for him, and that they were nonresidents of the precinct.

The reply was a denial of the answer. On January 4, 1926 (rule day), without permission had or notice given, Siler filed an amended petition in which he set up

the names of seven other parties who, though nonresidents, were permitted to vote for Brown· at the·Mt. Ash precinct, two other parties who were less than 21 years of age, and 16 other parties who had voted openly on the table. He amended his petition as to ·Kensee precinct by giving the names of six nonresidents who had been permitted to vote for Brown; of two parties who had been permitted to vote for Brown in the absence of the clerk and upon ballots not issued by the clerk, and 17 parties who had voted openly on the table. As to Proctor precinct, he gave the names of three parties who were nonresidents and had been permitted to vote for Brown. On January 22, Brown filed an amended answer, denying the matters set up in the amended petition, and as to Boston precinct, giving the names of 11 others who had voted openly for Siler, and as to Wolf Creek precinct, giving the names of 13 parties who had voted openly for Siler, and giving at Emlyn precinct the names of 11 parties who had voted openly for Siler, and at Cane ·Creek precinct the names of 11 parties who had voted openly for Siler, and at Jellico precinct, the names of 25 parties who had voted openly for Siler. Wherefore he sought to throw out that precinct.

The court struck out the whole of Siler's amended petition and Brown's amended answer. In so far as this amended petition and amended answer sought to make new grounds of contest, the action of the court was correct; but to the extent that this amended petition and amended answer merely made more specific the grounds of contest already charged in the answer and petition, the action of the court was erroneous. The certificate of election was issued on November 5, and the 15th of No-·vember was the last day whereon Siler could have filed any ground of contest. The process was served November 20, and December 9 was the last day whereon Brown could by answer, file any grounds of counter contest.

In his third ground of contest, Siler had sought to have a recount of the votes in Proctor, Mt. Ash, Jellico, Kensee and Saxton, and we have given above a copy of the third paragraph of his petition wherein he sought this recount. This paragraph was sufficient, and the court should have given him the recount asked for. Baker v. Dinsmore, 138 Ky. 277, 127 S. W. 997. It is not essential that the contestant shall set forth the grounds of contest with that precision required of a pleading in a civil action,·

certainty to a common intent being all that is generally required, and technical objections will be disregarded. Brown filed a demurrer to this ground of contest which the court sustained. Nevertheless, after sustaining a demurrer, the court did recount the votes in Kensee, Mt. Ash and Proctor. If the court had recounted the vote in all the prcincts wherein Siler had sought a recount, then we might conclude that the court had reconsidered his action in sustaining a demurrer and had decided to overrule it, and recount the votes; but as the court did not recount the vote in all the precincts, we cannot presume that the court had reconsidered the ruling on the demurrer to this paragraph of Siler's petition. After a demurrer was sustained to this paragraph, there was no pleading in the record authorizing the court to recount this vote, and without some pleading asking for a recount, the judge of the circuit court has no more authority to open a ballot box and recount the votes than the village shoemaker; hence we must treat his recount as a nullity, and in considering this case, we must assume that the vote was as certified by the election officers, that is, that Brown received 679 votes and Siler 671.

Siler alleged that his opponent was not a resident of Proctor precinct, and questions that votes cast at the precinct by Dr. Brown and Mrs. Brown and by their daughter. The evidence shows that these parties live in a house in Jellico, Tenn., which belongs to Dr. Brown, and his daughter is a school teacher at that place; but Dr. Brown has a house rented in Proctor precinct, and his sister keeps house for him there. He is there a portion of the time, and a portion of the time he is at the house in Jellico, Tenn. He practices medicine at Proctor, and has an office there, and while we are by no means certain that he had a right to vote, still, we have treated his vote, and that of his wife and daughter as legal, because we have reached the conclusion that he was not elected anyway.

The court struck the depositions of Ike Lay, Louis Meadors, Alifair Moses, Sherod Cox, Ollie Davenport, George M. Davis, Tom Cox and Annabelle Cox, which was properly done, as these parties were testifying about open voting at Pleasant View and Wolf Creek precincts, at which precincts there had been no charge of open voting made in the original pleadings, and the question of open voting at these precincts was only raised by pleadings filed after the expiration of the time for so doing.

The issues in this case were made up December 5;' the thirty days given the contestant for completing his proof expired January 3, but he completed his proof on January 2, and so notified his adversary. By section 1596a-12, Ky. Stats., the contestee had twenty days thereafter to complete his proof, and he did complete his proof on January 22. Now, if this "twenty days thereafter" means twenty days from the time the contestant completed his proof, then the proof taken on January 22' should not have been received, but we have concluded that this expression as used in the statutes, means twenty days from the last day on which the contestant could take proof. In other words, it means fifty days from the day the issues are completed.

Siler is asking to have the precincts of Proctor, Mt. Ash and Kensee thrown out, and Brown is seeking to throw out Jellico, but in the case of Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69, we said:

> "If it can reasonably be done, a court should uphold the validity of an election, and not set it aside for light and trival causes, and where there has been fraud, intimidations, bribery, illegalities, and irregularities, and the results of such sinister influences can be eliminated, and the results clearly ascertained between the legal voters, it is the duty of the court to do so, and to sustain the election."

See also, Browning v. Lovett, 94 S. W. 661, 29 R. 692. Accordingly, we have not thrown out any precincts, but have eliminated the votes cast by parties not entitled to vote, and the votes openly cast by those entitled to vote.

In his petition contesting this election, Siler had charged in the 8th paragraph thereof that in Proctor, Mt. Ash and Kensee a large number of voters who were under 21 years of age, and who had not resided in the precinct 60 days or in the state one year, were permitted to vote and their votes counted and certified by the election officers, and that for these reasons it is impossible to ascertain the true number of legal votes cast for either contestant or contestee in either of said precincts, and all of the precincts should be thrown out, and the votes cast therein should be disregarded. These grounds of contest were defectively stated, and if a motion had been made to make them more specific the court should have required that that be done. See Owsley v. Hill, 210 Ky.

285, 275 S. W. 797; Bingham v. Johnson, 193 Ky. 753, 237 S. W. 1077.

In the last named case, we held that an amended petition could be filed, perfecting a ground defectively stated in the petition, and cited in support thereof the cases of Francis v. Sturgill, 163 Ky. 650, 174 S. W. 753; Wilson v. Hines, 99 Ky. 221, 35 S. W. 627, 18 Ky. L. R. 233; Phillips v. Ratliff, 134 Ky. 704, 121 S. W. 460; Johnson v. Little, 176 Ky. 505, 196 S. W. 156; Ann. Cas. 1918A 70. In the case of Hulett v. Carter, 194 Ky. 454, 239 S. W. 789, we said that an amended petition which set up new grounds could not be field, but in that case we further said that it is competent to cure or make perfect by an amendment an original ground defectively stated, and cited in support thereof a number of cases. In this case, if either party had made a motion to require his adversary to make his pleading more specific, the court should have sustained that motion and should have required that to be done; but as neither party did that, then the parties had the right to proceed to prepare and submit their case in this indefinite form, and if they chose by amendment to make it more specific, such amendment should have been allowed; but they should not be permitted to set up new grounds in their amendment.

In the case of Francis v. Sturgill, *supra,* we quoted the following from Lunsford v. Culton, 23 S. W. 546, 15 Ky. L. R. 504:

> "A notice of the contest because of illegal votes being cast for the one party or the other, while it should be required to be made more definite, if objection is made in proper time, is sufficient if parties see proper to make an issue without objection and proceed to investigate the case."

Practically the same thing was said in the case of Weller v. Muenninghoff, 155 Ky. 77, 159 S. W. 632. Thus it follows that if these parties were content to prepare and try this case in this indefinite form, they had a right to do so.

Coming now to the votes themselves, we find that at Pleasant View precinct, Susan Troutman, John Reed and Mrs. John Reed each voted for Brown. Susan Troutman states in her deposition that she had only lived in Kentucky eleven months at the time of this election. Pre-

vious to that she had lived in Tennessee for about a year, and previous to that she had lived in Harlan county. Before living in Harlan county, she had lived at Pleasant View. She had a house in Pleasant View, which she rented out and to which she expected to return, and in which it was her intention to make her home. She had never voted in Tennessee, and we find this was a legal vote. John Reed had formerly owned a house in Pleasant View which he sold. He then rented a house there, which he kept until October 8, at which time he gave up this rented house and moved to Mt. Ash with his family, but he and Mrs. Reed returned to Pleasant View and voted for Brown, and we find they were not entitled to vote. These two votes must be deducted from Brown.

At Savoy precinct, Siler received the vote of Sarah Steeley, who had been convicted of a felony. There is no evidence that she had been pardoned or restored to citizenship; on the contrary, she says she served her time.

"As a rule, disfranchisement will be presumed to continue in the case of ex-convicts until shown to have been removed by the production of a pardon." 20 C. J. 80, sec. 46. Siler must lose this vote.

Brown contends that there were other votes cast for Siler at that precinct by parties not entitled to vote, and in his original answer and counterclaim, gives the name of Ex Alder, who previous to election day, had arranged to move to Emlyn, and who had begun moving his things to his new home, but who had not completed moving on election day, and we find, was therefore entitled to vote. The same is true of Bert Alder, who is apparently a member of his family. We also find that Kizzie Steeley and May Steeley were legal voters in this precinct, though Brown complains of their votes. They were the daughters-in-law of Zarah Steeley, who was dead, and from whom their husbands had inherited an interest in a home in Savoy, whereat these people had the most of their household goods, all the time, though they had been temporarily absent therefrom and had temporarily removed therefrom a portion of their household goods, but they say it was always their intention to return to Savoy, and at the time of the election they had returned. Brown also names six other parties who were not, as he says, legal voters at this precinct, and had voted for Siler; but there is no proof that these parties were not

legal voters, or how they voted. Brown does not, in his brief, contend that they were not legal voters, and the question of the legality of their votes must be treated as waived. McCorkle v. Chapman, 181 Ky. 607, 205 S. W. 682; Caudill v. Caudill, 212 Ky. 433, 279 S. W. 656.

At Wolf Creek precinct, in his original answer, Brown alleged that Alifair Moses, Ancil Moses and Nannie Caddell were nonresidents of this precinct, and had been permitted to vote for Siler. We find no proof to support this contention, and Brown doesn't call our attention to any in his brief, so we must treat that contention as waived, and treat these as legal voters. Brown established by proof that several parties had voted openly for Siler in this precinct, but as he had not made a charge in his original answer of open voting at this precinct, he cannot get the benefit of this contention. He did make a charge of open voting in his amended answer, but that was equivalent to making a new ground of contest, as no such charges had been made originally, and this amendment came too late. In his original answer, Brown contends that Perry Wells, Frances Wells, John A. Beard and Cora Bowling, were permitted to vote for Siler at Emlyn voting precinct, and that they were not legal voters; but we find no proof to support his contention, nor has he called our attention to any in his brief. We must conclude that these were legal voters. He produced some proof that several parties had voted openly at this precinct for Siler, and he had made such a contention in his amended answer; but had not, in his original answer, made any charge of open voting, hence this amounted to a new ground of contest. It came too late, and we cannot consider the question of open voting at this precinct. In his original answer, Brown gave the names of six parties who had voted at Cane Creek precinct without being legally entitled to vote. Of these, the proof shows that Cordia Veatch was less than 21 years of age, and that John W. Smith and his wife had moved into the precinct from Pioneer, Tenn., in July preceding the election, and as these three voted for Siler, these 3 votes must be deducted from Siler's vote at this precinct. We find no proof that the other three parties named in his original answer were not legal voters, and Brown has called our attention to none in his brief. Again, he established that several parties had voted openly for Siler, and again we find that he made such a charge in his amended answer, but there was no charge

of open voting at this precinct in his original answer, hence he cannot get the benefit of this.

In his answer, Brown had made a general charge of open voting at Boston precinct, and the proof shows that Louis Cornette, Mancy Cornette, Nelson Bowling, Mandy Fox, Martha Dority, Mary Dority, Martha Bullock, Charlie Bullock and Sarah Bowling were permitted to vote openly for Siler at this precinct, and Siler must lose these nine votes. In his original answer he had charged that Allen Fox, Marion Trammel, Relda Trammel, Alma Trammel, Bill Hammil and Jennie Hammil had been permitted to vote and had voted for Siler at this precinct, without being legal voters. We find that Marion Trammel and Relda, his wife, and Alma, his daughter, did vote at this precinct. The proof shows that they had lived and voted at this precinct for 30 years, that for a few years they lived on Dr. Rose's farm in Tennessee, but that it was always their intention to make their home at this precinct, and they have always voted there and have never voted in Tennessee. In December, 1924, they moved back to Kentucky. We find that they were entitled to vote.

We find no proof relative to the other three alleged illegal voters named in the original answer, and Brown has called our attention to none in his brief, so we must conclude that they were legal voters.

In his original answer, Brown made a general charge of open voting at Jellico and the proof shows that the following parties voted openly and illegally for Siler at this precinct: Chesley Addington, Joe Morning, Mary Morning, Emaline Gibson, Sabrina Lovell, Kate Lane, J. P. Logsdon, Mrs. J. P. Logsdon, Jane Goslin, Maude Carroll, Garland Henson, Jessee Bellew, M. B. Perkins, James Meyers, Polly Meyers, Henry Fox, Lizzie Paul, Mrs. Will Parker, Louis Ganny, Melvina Murray, James Elliott, Alice Goins. These twenty-two votes must be deducted from Siler's vote at this precinct. The proof shows that Brown got three illegal votes at this precinct, but as Siler had not in his original petition attacked the vote in this precinct, Brown does not have to lose them.

At Proctor voting precinct, Siler had made a general charge of open voting for Brown, and the proof shows that at this precinct the following persons did vote openly for Brown: Alice Brown, W. P. Bray, Laura Ann Thompson, Margaret Day, Orville Jeffreys and Richard Williams. Siler in his petition, had also made a general

charge of illegal voting at this precinct as stated, *supra,* that the proof shows that Brown received the vote of Mrs. Thomas Elwood, whose deposition was taken, and who says in her deposition that she had not been a resident of Proctor precinct 60 days next before the election; that she and her husband, Thomas Elwood, had lived in Lewis county. Her husband is dead, and we do not know how he voted. Walter Hawkins and his wife were permitted to vote at this precinct. These parties, together with Ambrose Timmons, had left this precinct in October, 1924, and had removed to Texas, where they made a crop; but in August, 1925, they returned. None of these parties should have been permitted to vote, but they voted, and we have no means of knowing how they voted. Sherman Foster was permitted to vote in this precinct, and the proof shows that he lived in Tennessee. The same is true of Arnold McNealey, but we do not know how they voted. Thus we find that Brown received six votes which were cast openly for him, and which he must lose, also he must lose the vote of Mrs. Thomas Elwood, making a total of seven votes, and we find there were six votes cast at this precinct by parties not entitled to vote; but we do not know who received them. There was proof of one illegal vote for Siler, but as Brown had not attacked the vote of this precinct, Siler does not have to lose this vote. There were several other votes at this precinct which Siler had attacked as illegal, but as we have reached the conclusion that he has received a majority of the legal votes, it is not worth while to carry the investigation any further.

At Kensee precinct the proof shows that the following parties voted openly for Brown: Bart Cox, Dona Cox, Susie Meadors, W. F. Perkins, J. W. Perkins, Dewey Bunch, Rachel McCullough, Hannah Pittman, and Dora Bunch, thus making nine votes that Brown must lose. The following parties voted openly, but the proof fails to disclose for whom they voted: Henry Allison, Linda Smith, Joe Pittman, Henry Bunch, Maynard Lynch. The proof shows that Rose Meadors was permitted to vote and that she was less than 21 years of age. However, we do not know for whom she voted. The proof shows that John Lee and E. Lawson were voters resident in this precinct, and that they did not go to the polls, but some one did receive ballots issues in the name of John Lee and E. Lawson, and voted them. Thus we have in this precinct a total of eight illegal votes, and we are unable to determine for whom they were cast.

At Mt. Ash precinct, the following parties voted openly for Brown: Willie Crawford, Frank Greenleaf, Jule Henderson, Ryal Alder, Doll Alder, Pearl Riley, Martha Riley, Lillian Foster, Rachel Talley, Delphia Jones, John Ellison, Minnie Brown, Minnie Knight, Lou Crawford, Ben Riley, Martha Ellison, Molly Cook, Mag Greenleaf, Arvilla Crawford, Andrew F. Knight, Maggie Moss, Walter Brown and Mabel Riley. Of course, Brown must lose these 23 votes, and in addition to these, there were 21 votes cast at this precinct by parties not entitled to vote. These we have divided into two groups. In the first group we have placed those that the proof shows cast their vote for Brown. In this group we placed Milas Staniford, Ulas Staniford, Fairy Tye, Mary Jones, and George Powers, who were not residents of this precinct, Frank Ball who had lived there less than 24 days, and Ed Hays, who was less than 21 years of age; M. W. Worthington and wife and N. B. Foley and his wife, who had lived in the precinct less than 60 days. Of course, Brown must lose these 11 votes. Worthington and his wife had formerly lived in this precinct, but in March, 1925, they left the precinct and went to Jellico, Tenn., where the husband rented a shop and engaged in business. The company for which he had worked previous to March, had difficulty in getting some one to do the work which he had been doing, and in August, 1925, he was re-employed. Shortly thereafter he and his wife returned to Kentucky; but they should not have been permitted to vote. N. B. Foley and his wife had formerly lived in this precinct, but moved to Bon Jellico where they lived about eight months, and while there Foley voted at that place. They returned to this precinct less than 60 days before the election, and they should not have been permitted to vote.

In the other group of parties who voted at this precinct, but should not have been allowed to do so, we find the names of Steve Bowling, Lee Bowling, Will Parks and Berry Lay, none of whom had lived in the precinct 60 days. Boozer Payton was a resident of Tennessee. Nona Petrey was less than 21 years of age; J. F. Reed was not a resident of the precinct. Some one voted in the names of Henry Davis, Robert Bowling and J. F. Bowling. Eight witnesses were introduced, who were asked about Henry Davis but none of them knew him. Six witnesses were asked about Robert Bowling, and no one knew him. In like manner, no one knew J. F. Bowling.

This evidently is a small precinct, as only 135 votes were cast, all told, and if these parties were entitled to vote, there would have been some one who knew them. The contestant had charged in his petition that these were illegal votes, and when he produced this evidence, that no one knew these men, after making such a charge in his petition, the burden then shifted to the contestee to show that such men existed and had a right to vote. There were 10 votes cast by this group and none of these parties had a right to vote; but we do not know for whom the votes were cast. We do know, however, that Siler only got 10 votes at this precinct, and one of these is proven to have been the open vote of Peter Perkins, and another the open vote of a man named Bowling. Siler only had eight other votes, and he took the deposition of eight parties who voluntarily testified, over the objection of Brown, that they were legal voters and had cast these votes; but we have held in the case of Major v. Barker. 99 Ky. 305, 35 S. W. 543, 18 Ky. L. R. 104, where a similar question was presented, that the secrecy of the ballot should be preserved, and Brown's objection to this evidence should have been sustained and evidence as to how these eight legal voters had voted, should not have been received. We know that two of the votes cast for Siler at this precinct were open votes, so he only had eight other votes, hence of this last group of ten votes cast by parties not entitled to vote, two, we know necessarily were cast for Brown, and while we have a strong suspicion that the other eight were cast for Brown, we have nothing, after the above evidence is excluded, to warrant us in saying so.

There were at this precinct, eight illegal votes cast; eight at Kensee and at Proctor six, that we are unable from the evidence to say for whom they were cast. It is suggested that the rule stated in 20 C. J., p. 183, should be applied. That rule is this: "In the absence of evidence that illegal votes cast at an election were given for a particular candidate, it is not error to apportion them among the several candidates and to deduct them *pro rata* from their respective scores." To adopt that rule and apply it here would still further reduce the vote of Dr. Brown, but as he has lost anyway, there is no reason why we should either adopt, reject or apply the rule, and we do not do so.

Summing up the conclusions we have reached, we find that Dr. Brown must have the following votes de-

ducted from his score: Mt. Ash 36, Kensee 9, Proctor 7, Pleasant View 2, making a total of 54.. The following deductions must be made from Siler's vote: Savoy 1, Boston 9, Cane Creek 3, Jellico 22, making a total of 35. Deducting these sums from the return as made by the election officers, we find that Dr. Brown received 625 votes, while Siler received 636. It follows, therefore, that Siler was elected, and it is now so adjudged. The judgment is reversed, with directions to the trial court to enter an order adjudging Siler to have been elected.