## Combs v. Brock.

(Decided September 29, 1931.)

W. C. EVERSOLE, CARL F. EVERSOLE, and S. M. WARD, for appellant.

J. B. WALL, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

' At the regular primary election in 1931 the appellant and plaintiff below, A. B. Combs, and the appellee and defendant below, Hiram M. Brock, were opposing candidates for the Republican nomination for the office of State Senator from the Thirty-Third senatorial district of Kentucky, which is composed of the counties of Perry, Letcher, Leslie, Clay, and Harlan. The ballots as counted and certified from the four counties of the district, not including Harlan, gave plaintiff a substantial majority; but the same as counted and certified in Harlan county overcame that majority and created one for defendant over plaintiff in the entire district of 6,447 votes. On August 14, 1931, and within the time prescribed by law, plaintiff filed this contest action in the Harlan circuit court against defendant, in which he stated his grounds of contest in five separate paragraphs in his petition, the first of which averred plaintiff's qualifications for the office, his compliance with the law to become a candidate in the primary, the result of the election in each county of the district, and the certification thereof, giving to defendant the large plurality of the votes cast, and then averred that defendant was not entitled to the nomination because he did not receive a majority of the legal votes cast in the primary, but that, on the contrary, plaintiff received a majority of such legal votes and was entitled to the certificate of nomination.

The remaining paragraphs of the petition, excluding No. 4, charged in general language that enough illegal

votes were cast in Harlan county for defendant upon numerous grounds of disqualification of such voters which if deducted from the certified vote of defendant would reduce his total legal votes below the number of legal votes cast for plaintiff as to give the latter a majority of the legal votes cast in the election in that county, thus entitling him to the nomination. But no specific number of such illegally cast ballots in any of the precincts of Harlan county were named in any of such paragraphs, or elsewhere in the petition; nor were any persons named as having cast an illegal ballot. Neither was it averred anywhere in any of those paragraphs the name of any voter in any precinct whose ballot was marked openly on the table so as to violate the secrecy of the ballot and invalidate the vote, nor, was any ballot alleged to have been cast by the officers of the election in any precinct in Harlan county, all of whom it was alleged were friends of defendant and that they did deposit some ballots for him without any individual voters appearing, whether qualified to vote or not, and such general allegations, without such requisite specifications, compose the entire substance of all the paragraphs of the petition, wherein a subtraction from or a reduction of the number certified for defendant was sought.

Paragraph No. 4 of the petition averred, in substance, that defendant and his alleged co-conspirators and his friends and workers during the primary campaign and on election day, with defendant's knowledge and consent, spent large sums of money for the purpose of corrupting and bribing voters to cast their ballots for him, and that paragraph, together with the last sentence in paragraph 3, clearly and concisely states that a large number of votes received by defendant in Harlan county were so bribed and purchased, either by himself, or by others with his knowledge and consent, and that in doing so defendant "was guilty of gross violations of what is known as the Corrupt Practices Act," being section 1565b-1 to section 1565b-21, inclusive, of the Kentucky Statutes. In the last sentence of that paragraph it is further averred that the same unlawful conduct, consisting in violations of the Corrupt Practices Act, were engaged in in the other counties of the senatorial district. The intimations contained in some of the other paragraphs of the petition which might be construed into violations of the Corrupt Practices Act were inserted, as

the context plainly shows, for the purpose of disqualifying certain voters or groups of voters, because of the actions complained of in the petition, so that the total vote certified for defendant might be reduced by the number of votes so cast and thereby produce a majority of legal votes for plaintiff. They were evidently not made in such paragraphs in reliance on violations of the Corrupt Practices Act as was done in paragraph 4, where the charge is made that the bribery therein referred to was in violation of that statute. The prayer of the petition was in the alternative, i. e., that plaintiff be declared the nominee because of the alleged violations of the statute by defendant and its observance by plaintiff, but also that if it should be found that plaintiff for any reason was not entitled to the nomination that defendant be adjudged not entitled thereto because of such violations by him, and by his friends with his knowledge and consent.

Defendant demurred to the petition as a whole and to each separate paragraph thereof, and without waiving it moved to strike certain allegations therefrom, and, perhaps, other motions, and without waiving any of them filed his answer and counterclaim in which the material averments of the petition as contained in all of its paragraphs were specifically denied; and in the fourth paragraph of the answer defendant charged a violation of the Corrupt Practices Act by plaintiff in that he had expended in his campaign to procure his nomination more than the statute permitted, and that he and his friends, with his knowledge and consent, bribed votes to be cast for him, and that he thereby was not entitled to the nomination because of such violations. He prayed that he be adjudged to have received the nomination for the Republican candidacy for the office involved and that "plaintiff be adjudged and held to be guilty of violating the Corrupt Practices Act of Kentucky."

Following pleadings made the issues and the court, when the cause was considered for the purpose of disposing of preliminary motions, demurrers, etc., first overruled plaintiff's motion for him to vacate the bench, which was made by plaintiff before answer or any other motion by defendant; and the court then sustained a demurrer to the petition and to each paragraph thereof, and, since it was then too late for plaintiff to amend under the provisions of chapter 50, page 153, of the Sessions Acts of 1930 (and which was and is an amendment

of section 1550-28 of the 1930 Edition of Carroll's Kentucky Statutes), the petition was dismissed, and from that judgment plaintiff prosecutes this appeal.

It will thus be seen that only two questions are presented, and which are: (1) Whether or not the court erred in overruling plaintiff's motion for him to vacate the bench; and (2) whether error was committed in sustaining the demurrer to the petition, and to each paragraph thereof and dismissing it? Those questions will be considered and determined in the order named.

The grounds stated in plaintiff's affidavit and motion to require the judge of the Harlan circuit court to vacate the bench were, in substance: (a) That the judge, as this affiant "is informed and believes," is financially interested in coal mining in Harlan county, as is also true of defendant, and that they are political and personal friends; (b) that some of the coal operators in Harlan county, prior to the primary election involved formed some sort of league or coalition to elect officers of their choosing, and that they concluded to and did support defendant in the primary election in August, 1931; (c) that the coal miners in Harlan county, or some of them, at the time of and preceding the primary election, were endeavoring to unionize by joining some labor organization and that the operators of the mines were opposed to that, and to prevent its being accomplished, as well as to nominate defendant as the Republican candidate for senator in that district, caused the State Militia to be sent into the territory and the appointment of deputy sheriffs and patrolmen to aid and assist in their purposes, and that such actions produced great bitterness between the two factions, "to such an extent that almost a state of anarchy has prevailed and is now prevailing in that county;" (d) that the judge of the Harlan circuit court was opposed to such anarchistic condition and the causes that produced it, and freely expressed himself as "opposed to what he terms 'radicals and communists' "; and that because the miners or the great majority of them had declared in favor of plaintiff as the nominee in the primary election, the judge was therefore disqualified to impartially try the case. It was also further averred in the affidavit (e), that the friends of plaintiff before the election and in advocating his candidacy declared themselves in favor of the contention of the miners (whatever it may have been) and were friendly to their cause, and that in speeches by them in

behalf of plaintiff they may have referred to the presiding judge as entertaining opposite sentiments and referred to him in derogatory terms. It was also stated in the affidavit (f) that plaintiff had referred in his petition to the judge as being one of the conspirators to bring about plaintiff's defeat, but he made no such charge in his affidavit, nor did he make the averments in his petition a part of his affidavit. On the contrary, he filed as an exhibit, and as a part of his affidavit, a clipping from a newspaper containing a published statement of the presiding judge denying that he was guilty of any such alleged conspiracy and that many days before the primary election he left Kentucky and entered a hospital in Baltimore, Md., where he remained for fifteen days after the election before returning to Kentucky, or to the Thirty-Third senatorial district. Lastly, it was alleged in the affidavit (g) that the presiding judge informed plaintiff some time before the primary election that he (the judge) was under obligation to support defendant and that he intended to do so.

The above-enumerated grounds contained in subdivision (a) to and including (g) are, in substance, all of those relied on in support of plaintiff's motion for the judge to vacate the bench, and a mere recitation of them is all that is required to show their insufficiency, under numerous opinions of this court. In the case of Lilly v. O'Brien, 224 Ky. 474, 6 S. W. (2d) 715, and others referred to in the opinion therein, it was held that the litigant asking for the vacation must state facts showing that the trial judge is *disqualified* and that it is not sufficient to merely state that the applicant does not *believe* that the trial judge will afford him a fair trial. From an examination of the grounds above enumerated, it will be seen that some if not all of them are founded on alleged facts supported only by plaintiff's "information and belief," and not by positive statements of the existence of such facts. But, when the grounds are separately examined and analyzed it is found that they state no fact from which it logically can be deduced that the trial judge, being an honest official as it should be presumed until the contrary appears, was legally disqualified to preside at the trial of this case. The fact that he was a stockholder in some one or more coal mines in Harlan county, and that some of such corporations (and from aught that appears in the affidavit those in which the judge was not a stockholder), operating in that

county, were opposed to the nomination of plaintiff, and also opposed to the unionizing of mining labor in that county, when a majority of the miners were supporting plaintiff, can have no logical effect to disqualify the presiding judge even if he was a stockholder merely in some of the corporations whose managing officers entertained such convictions.

It is nowhere alleged in the affidavit that the presiding judge was either influenced or attempted to be influenced by any such considerations, either by importunities from coal operators or otherwise, and the same is true with all of the grounds relied on. The cases supra, and those of Chreste v. Commonwealth, 178 Ky. 311, 198 S. W. 929; Nelson v. Commonwealth, 202 Ky. 1, 258 S. W. 674; and Huggins v. Field, 196 Ky. 501, 244 S. W. 903, 29 A. L. R. 1268, not only hold that in order to create a situation requiring a judge to vacate the bench the applicant should state facts, but that such facts when stated must be sufficient to at least produce prima facie legal disqualifications as measured by the operating influences upon human nature, human conduct, and the probabilities of adverse influential effect upon individual action. Immaterial and manifestly unweighty facts that could have no influence to swerve the action of an honest officer are not sufficient to authorize the vacating of the bench by the presiding judge, although vehemently urged to the contrary by the applicant. Such a rule is eminently right and proper, since a contrary view would authorize a litigant, and especially one who was prosecuted under a criminal charge, to disqualify the presiding judge and force him to vacate the bench solely because he was bitterly opposed to such violations of the law as the one with which the particular defendant and applicant was accused.

Circuit judges, we repeat, are presumed to be honest and implicitly respect their oaths of office, and will not be influenced by petty quarrels, disputes, or individual choice between candidates, and which, in substance, is all that is contained in plaintiff's affidavit in this case. Without further elaboration, we conclude that the court did not err in the ruling complained of in this ground, and which brings us to a consideration of ground 2 urged for a reversal of the judgment, involving the sufficiency of the petition and its several paragraphs.

We have hereinbefore stated the substance of each paragraph of the petition, and from which it will be

observed that none of them except No. 4 (and the last sentence of No. 3) legally charged any grounds of contest, since all of that pleading, except the portions mentioned, were directed to the elimination of illegal votes that had been counted and certified for defendant from the total number so certified for him, and we have consistently held that when such elimination of votes from the number certified forms the ground of contest, the names of such illegal voters, as well as the facts constituting their disqualification, must be alleged. Some of the cases so holding are: Lunsford v. Culton, 23 S. W. 946, 15 Ky. Law Rep. 504; Thompson v. Stone, 164 Ky. 18, 174 S. W. 763; Burke v. Greer, 197 Ky. 555, 247 S. W. 715; and Siler v. Brown, 215 Ky. 199, 284 S. W. 997; and otherers referred to in those opinions, some of which (and still others) are found in note 48, page 230, of 20 Corpus Juris. There are none to the contrary. Besides, the 1930 act, supra, found on page 156 of the volume in which it is contained, requires that the petition in a contest action of a primary election shall state "the specific grounds relied upon for such contest," and that any counter contest pleading shall do likewise. The trial court held the petition and each paragraph thereof insufficient upon the ground that nowhere in that pleading were the number or the names of any alleged illegal voter stated, and for which reason the pleading as a whole did not conform to the rule supra adopted by this court in proceedings of this kind. The demurrer was also sustained to each paragraph following the first one upon the additional ground that plaintiff in neither of them referred to or incorporated his first paragraph as a part of any of the following ones; nor did he aver in any of the paragraphs of his petition, following the first one, his candidacy for the office, or his qualifications or eligibility for the nomination. It was, therefore, concluded by the trial court that plaintiff, in the subsequent paragraphs to the first one in his petition, did not conform his pleading to the requirements of subsection 3 of section 113 of the Civil Code of Practice, saying: "If there be more than one (cause of action), each must be distinctly stated in a separate, numbered paragraph." And which was construed by this court in the case of L. & N. R. R. Co. v. Adams, 148 Ky. 513, 147 S. W. 384, 386, to require that "each paragraph should be sufficient in itself, or, in other words, state a good cause of action without reference to the other paragraph." From which

it was concluded by the trial court that all of the paragraphs in plaintiff's petition, following the first one, were insufficient under that interpreted rule, because neither of them referred to, or incorporated, the first paragraph of the petition, nor did they allege facts which made them sufficient in themselves, in that they did not separately aver plaintiff's candidacy, qualifications, or other facts entitling him to the nomination if he had received a majority or plurality of the legal votes.

We do not think that the latter alleged defect in the pleading is sound. Section 113 of the Civil Code of Practice, under which the trial court in part rested its conclusion, deals with the right of a litigant to incorporate separate *causes of action,* or defense, in one pleading as it is competent to unite in one action under the provisions of section 83 of the Civil Code of Practice, and when that is the fact the construction adopted and applied by the trial court in this case would, perhaps, be the correct one. However, as we view the situation presented in this case, the plaintiff never possessed but one "cause of action" against the defendant, and which was that defendant, for various reasons (usually referred to as grounds), was not entitled to the certificate of nomination for the office he sought because of the facts set forth in the various paragraphs of the petition constituting the separate reasons why he was not so entitled. The rule applied by the trial court embodies, no doubt, the proper practice when the united and joined causes of action are wholly independent of each other, but, under the practice, may be joined in one action, and which is an entirely different case from that of relying upon numerous grounds in support of only *one* cause of action. In the Adams case, supra, there was a joinder of a number of separate causes of action which the Code permitted to be done in one pleading.

Here, plaintiff in his petition disputes the right of defendant to the contested nomination and insists that he (plaintiff) is entitled to it for various *reasons or grounds* which he saw proper to present to the court in separate numbered paragraphs, but which could have been done in one paragraph with appropriate designations of the different reasons. It is, therefore, concluded that the court erred in so far as it sustained the demurrer to the last four paragraphs of the petition for the latter reason assigned, but we are equally convinced that he properly sustained the demurrer to all of the paragraphs

of the petition, except No. 4 and the last sentence in No. 3, for the defects hereinbefore stated, i. e., that such parts of the petition (other than those excepted) sought to eliminate votes from the total number received by defendant because for various reasons they were illegal or illegally cast for him. To make that ground of contest effectual, as we have seen, it was incumbent upon plaintiff to designate the number of such votes and the names of the persons who illegally cast them, but which he did not do. Having so concluded there remains but one other question, and which is: Whether the court was correct in sustaining the demurrer to paragraph 4 of the petition, and that part of paragraph 3, charging violations of the Corrupt Practices Act by defendant and others in his behalf with his knowledge and consent?

Section 1565b-11 of our present Statutes, which is a part of our Corrupt Practices Act, expressly prescribes that in any election contest of a nomination or an election to any office the contestant may allege the violation of any of the provisions of the act as a ground of contest, and if any of them is proven against his antagonist the latter forfeits the nomination, or election, and the contestant, if not guilty of like violations, will be awarded the certificate of nomination or election, regardless of the fact that he did not receive a majority or plurality of all the votes cast in the election. We have held in the cases cited in the notes to that section that in so far as it applied to a *general* election it was unconstitutional to the extent that it attempted to confer the office on a candidate who did not receive a majority or plurality of the votes cast in a general election. But in the same cases we also held that the provisions of the statute were constitutional as applied to nominations by primary elections. See McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581; Charles v. Flanary, 192 Ky. 511, 233 S. W. 904, and Mellon v. Goble, 210 Ky. 711, 276 S. W. 830. Also the late case of Cooper v. Montgomery, 230 Ky. 633, 20 S. W. (2d) 479. In the cases of Burke v. Greer, supra, and Bingham v. Smith & Duff, 210 Ky. 256, 275 S. W. 811, we expressly held that a pleading charging bribery in a contested election was sufficient without specifying the names of the persons bribed or their number. In the same cases, and others not necessary to mention, we held in effect that the bribery of even one vote by a candidate, or some one acting for him and with his knowledge and consent, was a viola-

tion of the Corrupt Practices Act sufficient to deprive the candidate of the nomination or election if such bribery was satisfactorily proven.

The Corrupt Practices Act characterizes a variety of acts and omissions as offensive to its provisions, and it would, no doubt, be incumbent upon the pleader invoking them to specify in his pleading the particular denounced act or omission contained in the statute as constituting its violation, and we do not construe the provisions of the 1930 act, supra, when it says that the contest pleading shall set out "the specific grounds relied upon", to require any different rule of pleading, or more particularity than what we have heretofore adopted in the cases supra. Therefore, when plaintiff averred in the fourth paragraph of his petition, and in the last sentence of the third paragraph, that defendant had violated the provsions of the Corrupt Practices Act by bribing voters to cast their ballots for him, and precuring others to do so with his knowledge and consent, he sufficiently stated the ground of contest contained in section 1565b-11, supra, of our Statutes, and that the court erred in sustaining the demurrer thereto, and for this reason alone the judgment was and is erroneous.

Wherefore, the judgment is reversed for the reasons stated, with directions to set it aside and to confine the investigation of the trial to violations of the Corrupt Practices Act by the respective candidates in the particulars hereinbefore discussed, and for other proceedings not inconsistent with this opinion.

The whole Court sitting.