## Covington v. Joiner.

(Decided October 5, 1923.)

### Appeal from Graves Circuit Court.

1. Election—Amendment of Notice of Contest Only Changing Date of Hearing Not Stricken.—An amended notice of contest of election, the sole effect of which was to change the date of the hearing, did not set up any new cause of contest, and court properly refused to strike it.

2. Elections—Notice of Contest Held to Sufficiently Aver that Commissioners Failed to Count Ballots.—Notice of contest of election, alleging that the officers failed and refused to count seven ballots, but returned them as spoiled or rejected ballots to the board of election commissioners, and that such ballots were not counted nor canvassed, and that a sufficient number of them were cast for the contestant to nominate him, held to sufficiently aver that the board of election commissioners failed to count the seven ballots, enough of which were cast for contestant to give him the nomination if counted.

3. Elections—What Must be Shown as to Integrity of Ballots Sought to be Admitted in Contest Proceeding Stated.—The party who seeks in an election contest to have the ballots introduced in evidence must show with reasonable certainty that they are genuine and unchanged; but this does not mean that it must be proved that they have been so preserved and safeguarded that it has not

been possible to change or molest them, but that they have been so preserved that it is not reasonably probable that their integrity has been violated.

4. Elections—Integrity of Election Ballots Determined by Court.— In an election contest it is the province of the court, after hearing the evidence as to where ballots have been kept, and the supervision exercised over them by the clerk, to examine the ballot boxes and the ballots themselves, and determine whether they shall be received in evidence.

5. Evidence—Ballots Accepted as Best Evidence, Unless Lower Court Abused Discretion.—In an election contest, unless there has been an abuse of discretion in admitting ballots in evidence, the reviewing court will accept them as the best evidence of the number of legal votes cast.

6. Elections—Ballot Stamped Twice Held Defective, and Not Counted.—A ballot stamped twice, the larger part of one impression being in the square opposite contestee's name, and the larger part of the other extending into the square opposite contestant's name, should have been rejected, and not counted for either candidate.

7. Elections—Intention of Voter Considered in Counting Doubtful Ballot.—The intention of the voter must be considered in determining how a doubtful ballot shall be counted.

8. Elections—Ballot Containing too Many Stamps Held Defective so as Not to be Counted.—Where ballot contained three names, voter being entitled to vote for two, and was stamped in the squares after each of the candidates, it should not be counted for any of them, though the stamp in one square was a blur, the cross mark being plainly discernible in it.

ROBBINS & ROBBINS and L. R. SMITH for appellant.

STANFIELD & STANFIELD and R. N. STANFIELD for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

In the second ward of the city of Mayfield, at the primary election held in August, 1923, W. H. Housman, W. B. Joiner and J. M. Covington were candidates for the Democratic nomination for the office of councilman, there being two councilmen eligible for nomination from that ward. Housman received a majority of the votes from each of the two precincts in the ward. In the first precinct Covington received 65 votes and Joiner 54. In the second precinct, according to the certificate of the election officers, Covington received 93 votes and Joiner 102, giving to Covington a plurality of two votes on the face of the returns. The certificate of nomination was awarded to Covington, and in due time Joiner filed a con-

test against him, upon the hearing of which before the judge of the Graves circuit court and a recount of the ballots in the second precinct, it was adjudged that Joiner received a plurality of two votes. That judgment is in review on appeal to this court.

It is first contended by appellant that the second notice of contest given by appellee should have been stricken from the record because it set up a new cause of contest and fixed a new date for the hearing of it. The first notice was served on August 10th, wherein the date of hearing was fixed for August 20th, but on August 11th a new notice was served setting the date of hearing for August 18th. With the notice of August 10th appellee filed an exhibit stating the grounds of his contest, and in the notice also stated in a general way the reasons for it. The amended notice given the following day is substantially the same as to the grounds of contest as the original notice. No change as to the grounds set up in the exhibit filed with the original notice is included in the amendment. The sole effect of the amendment was to change the date of the hearing. It did not, therefore, set up a new cause of contest, and manifestly should not have been stricken.

Another contention of appellant is that the motion to strike both notices should have been sustained because it was nowhere alleged in the notices nor the exhibit that the board of election commissioners failed to count the seven ballots alleged not to have been counted by the election officers, or that they were in fact voted for the contestant. In both the notice and the exhibit it was alleged that the election officers failed and refused to count seven ballots that were cast in the contest for councilman, but returned them as spoiled or rejected ballots to the board of election commissioners. It was further alleged that those ballots were not counted nor canvassed in the race for councilman, and that a sufficient number of them were cast for the contestant to nominate him for the office. These allegations were tantamount to an averment that the board of election commissioners failed to count the seven ballots, enough of which were cast for contestant to give him the nomination, if counted.

It is also claimed by appellant that the court erred in counting all the ballots in the second precinct. The foundation of this claim is that the notice of contest is not broad enough to warrant a count of any of the ballots except the seven alleged to have been returned as spoiled.

On a count of those seven ballots it was found that each of the candidates had received the same number of votes if the count of the election officers as to the other votes cast in that precinct was accepted. Thereupon the court recounted the other ballots cast in that precinct, with the result stated. While the language of the notice is not as clear in respect to a recount of these ballots as it might be, it asks for a recount of all the ballots, asserting that such a recount would result in the contestant's nomination. We think the averments warranted an examination and retabulation of all the votes cast in that precinct.

It is argued for appellant that the integrity of the ballots was not shown to have been preserved, and accordingly it was error to open the ballot box and recount the ballots. A number of authorities are cited by counsel in support of this contention. An examination of those authorities shows that, although the courts recognize the rule that the ballots in their original condition are the best evidence of the number of votes cast at an election, their admission in evidence will not be permitted unless it is shown that their integrity has been preserved. Of course the party who seeks to have the ballots introduced in evidence must show with reasonable certainty that they are genuine and unchanged. Rich v. Young, 176 Ky. 813; Phillips v. Kincaid, 194 Ky. 750. This does not mean it must be proved that they have been so preserved and safeguarded that it has not been possible to change or molest them, but that they have been so preserved that it is not reasonably probable that their integrity has been violated. With the facilities afforded to the county clerks of the state for protecting ballot boxes intrusted to their care it would hardly be possible to introduce the ballots in any contested election, if the rule were so stringent as to require such care as would preclude the possibility of any tampering with the boxes. It is only such safeguarding as makes it reasonably certain that the ballots have not been molested that the law requires, and it is the province of the court, after hearing the evidence as to where the ballots have been kept and the supervision exercised over them by the clerk, to examine the ballot boxes and the ballots themselves and determine whether they shall be received in evidence. Unless there has been an abuse of discretion in admitting them in evidence, this court will accept them as the best evidence of the number

of legal votes cast.   The proof developed some circum-
stances from which the possibility of. molesting these
ballots could be inferred.   But in view of the testimony of
the county clerk and the fact that neither the box nor
ballots in question bore any evidence of having been
opened or in anywise handled or molested, it is our opin-
ion that the ballots were properly received as conclusive
evidence of the number of votes cast.

The final contention of appellant is that the trial
court improperly counted two ballots for the contestant
that should not have been counted, which ballots resulted
in adjudging him the nomination by a plurality of two
votes.   The contention is that one of those ballots should
have been rejected and the other counted for the con-
testee. The ballots in question are filed with the record in
this case, and we have examined them with a view of as-
certaining, if possible, the intention of the electors cast-
ing them.   On one of them the elector voted for Housman
for councilman and then seemed to have stamped the bal-
lot twice, the larger part of one impression being in the
square opposite Covington's name and the larger part of
the other impression extending into the square opposite
Joiner's name.   In other words, the two marks placed on
the ballot seem to be between the names of Covington and
Joiner, one of them extending into the square opposite
Covington's name and the other into the square opposite
Joiner's name.   We are unable from an examination of
this ballot to determine whether the elector intended to
vote for Covington or Joiner, and in consequence we con-
clude that the ballot should have been rejected.

The other ballot contains well-defined stamps in the
squares opposite the names of Housman and Joiner, but
between Housman's and Joiner's names is Covington's
name, and in the square opposite Covington's name the
ballot was also stamped, but the stamp is blurred.   It is
argued for appellee that it was the obvious intention of
the elector to vote for Housman and Joiner, and that by
mistake he stamped the ballot opposite the name of Cov-
ington and then attempted to erase the mark.   We would
not hold that this ballot was spoiled if the mark in the
square opposite Covington's name were merely a blur or
blot, for in that event it would seem fairly inferable that
the elector intended to vote for Housman and Joiner, and
by mistake blurred the ballot or dropped ink on it in the
square opposite Covington's name.   While there is a blur

in this square, the cross mark is also plainly discernible in it, and we cannot assume that the voter placed the mark there by mistake and intended to rub it out, thus making it a blur, any more than we can assume that he stamped the ballot at that place, which he undoubtedly did, and that the blur resulted from his unsteady use of the stamp or from the dropping of ink at that place. It is true that the intention of the voter must be considered in determining how a doubtful ballot should be counted. Nevertheless, we are unable, from an examination of this ballot, to ascertain that intention, or to assume that the ballot was stamped by mistake and the voter thereafter attempted to erase the mark, when there seem to be equal grounds for assuming that the disfigurement occurred in any one of two other ways, either of which would render the ballot invalid. We therefore hold that this ballot also should not have been counted.

It follows that each of the parties to this litigation received an equal number of votes, and, there being no nomination made, it is the duty of the board of canvassers for Graves county to determine by lot which of the two candidates was nominated. Kentucky Statutes, sections 1550-36, 1596a-11.

The judgment is reversed and the cause remanded for proceedings consistent with this opinion.