## Cooper v. Montgomery.

(Decided October 8, 1929.)

JOHN CAUDILL for appellant.

H. H. RAMEY and CLIFFORD E. SMITH for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Appellant and appellee were candidates for the nomination for the office of sheriff in the Republican primary election held in Magoffin county on August 3, 1929. The returns from the precincts as certified by the election officers indicated that Montgomery received 962 votes, and Cooper received 868 votes. Cooper contested, and, after some maneuvering by both parties, the contest was narrowed to a recount of the ballots in certain mentioned precincts. This is evidenced by an agreed order signed by the parties. It was agreed that the parties would abide by the vote as certified by the election commissioners in all of the precincts except the precincts of Bays, Flat Fork, Bloomington, Minix, Meadows, Middle Fork, Cow Creek, and Johnson's Fork. It was agreed that the ballot boxes from these precincts should be opened and the ballots contained therein recounted by the court after evidence establishing the integrity of the ballots. The agreed order covered a correction in Wireman precinct where Cooper had received 78 votes according to the certification, and Montgomery had received none. It was agreed that Cooper received only 25 votes and Montgomery none, a considerable discrepancy, but not particularly noticeable in an election where the returns were made up from the wishes and desires of those engaged in making the count rather than from the evidence afforded by the ballots.

All other grounds of contest were withdrawn by agreement. The county clerk testified about the custody and care of the ballots and the court was satisfied as to their integrity. He opened the boxes, examined the ballots, and recounted them. The results, as indicated by

the recount, as well as the results certified by the election officers, are shown by the following table:

| Precinct | Original | | Recount | |
|---|---|---|---|---|
| | Montgomery | Cooper | Montgomery | Cooper |
| Bays | 10 | 98 | 15 | 76 |
| Minix | 131 | 2 | 98 | 2 |
| Johnson's Fork | 102 | 3 | 52 | 5 |
| Cow Creek | 91 | 14 | 29 | 16 |
| Meadows | 89 | 13 | 50 | 35 |
| Flat Fork | 42 | 156 | 41 | 156 |
| Middle Fork | 47 | 13 | 47 | 13 |
| Bloomington | 23 | 123 | 23 | 123 |
| Totals | 535 | 422 | 355 | 426 |

As Cooper had received 393 votes in the other precincts after deducting 53 votes from his total in Wireman precinct, and Montgomery had received 434, the recount indicated the nomination of Cooper by a vote of 819 for him to 789 for Montgomery.

When the recount had been completed, but before the trial judge had made any finding, Montgomery raised an objection to the recount in the Johnson's Fork and Meadows precincts. The basis of his objection was that there were not enough ballots in the boxes. The stub book in each precinct indicated that more ballots had been cast than were found in the box. In one of the precincts the stubs indicated that 40 voters cast a ballot which was not in the ballot box, and in the other precinct 32 voters cast a ballot which was not in the ballot box. The trial court properly allowed additional proof relating to the integrity of the ballots in these two precincts. He was not precluded by his first ruling that the integrity of the ballots had been established. The only question is whether the evidence which he heard after he had concluded the recount destroyed the integrity of the ballots. There was no proof that the ballots had been tampered with in any way. They were delivered to the county clerk by the election officers. The clerk examined them and found them in good condition. He placed them in the vault in his office, and they were kept there until called for by the election commissioners. The proof by some of the officers indicates that more ballots were cast in the precinct than were found in the box. The election was irregular, and there is no attempt to show how many ballots were

actually cast in the precinct. A challenger, who was present, stated that more than 200 ballots were cast in the Republican primary, but he does not claim that he counted them or even that he counted the stubs in the poll book. No doubt something was wrong in this precinct as well as nearly all of the others wherein a recount was made. The results in many precincts, as certified by the election officers, were so far different from the results shown by the recount as to impress the mind with the belief that returns were made up by the election officers without regard to the actual votes cast.

The trial judge, after a reconsideration of the question, reached the conclusion that the ballots should not be recounted in Meadows and Johnson's Fork precincts. He should have recounted them. The returns, as certified by the election officers, were thoroughly impeached by the ballots found in the ballot boxes, and, to accept the returns from these precincts, when it was shown that they were incorrect, in preference to accepting the evidence of the ballots themselves, although there is a discrepancy in the number of ballots in the stub books, cannot be justified. The appellant received more votes than were certified for him, although the number of ballots found in the boxes were much less than the number certified. The ballots should have been accepted as the best evidence as the proof showed that the ballot boxes and the ballots contained therein were in proper condition at the time they were received by the clerk, and that the clerk properly preserved them until they were delivered to the election commissioners, and that they were then retained by him in the vault in his office until called for by the circuit court. The ballots cast in the election are always the best evidence of the voter's will, and should be accepted above any other evidence if the integrity of the ballots is established by the facts and circumstances. Snowden v. Flanery, 159 Ky. 568, 167 S. W. 893; Edwards v. Logan, 114 Ky. 312, 70 S. W. 852, 75 S. W. 257, 114 Ky. Law Rep. 312; Covington v. Joiner, 200 Ky. 378, 254 S. W. 1048.

The recount, as it should have been made by the lower court, when considered in connection with the returns of the precinct in question, showed that Cooper in the primary received 819 votes and that Montgomery received only 789 votes. Cooper alleged that he received a majority of the votes cast in the primary, which allegation was denied. By this allegation he evidently meant that he received a plurality, as only a plurality is re-

quired to nominate in the primary in this state. It is always incumbent upon a contestant to show that he was nominated or elected before it can be held that he is entitled to the certificate of nomination or election. In this jurisdiction, as well as in nearly all others, it is necessary for a candidate to receive a plurality of the legal votes cast in the election before he may be declared the winner in the election. The rule seems to be universal that one receiving less than a plurality of legal votes cannot be declared elected. This rule is sound because the people at large are interested in the election, and in a contest courts cannot ignore the fact that the people are interested, and decide the matter in such a way as to declare one nominated whom the people did not nominate. There are only two ways under our primary election laws that one may be declared the nominee as the result of a primary election. He must show that he received a plurality of all the votes cast in the election in the particular race. If he cannot show that, he may show that those receiving a greater number of votes than himself violated the Corrupt Practice Act (Ky. Stats., sec. 1565b1 et seq.). If he succeeds in showing that those receiving a higher number of votes than he received, according to the returns, violated the provisions of the Corrupt Practice Act, and that he did not violate the law, he may be awarded the nomination by the courts. That is the only difference between the general election and the primary election in this state so far as ascertaining the result is concerned. The matter of the violation of the Corrupt Practice Act is not involved on this appeal.

The only question involved was, who received a plurality of the votes? Before Cooper or Montgomery could establish their right to the nomination, it was necessary that one or the other establish that he received a plurality of the votes. Montgomery had a plurality according to the certification of the precinct officers. But this certification was nullified by the recount. When the true result was ascertained between Cooper and Montgomery, it was found that Cooper had received more votes than Montgomery, but it was incumbent upon him to establish that he received a plurality of the votes. In an effort to establish this fact, he introduced the certification made out by the election commissioners who tabulated and certified the returns in the race for sheriff. It was necessary for him to put this in the record, but when he did so he established by unchallenged proof that one Patrick,

who was a candidate for the same office, received 829 votes. This stands unchallenged. Cooper thus showed that neither he nor Montgomery received a plurality of the votes, and, as neither received a plurality of the votes and the provisions of the Corrupt Practice Act are not involved in this case, this court cannot adjudge that either Cooper or Montgomery was nominated in the primary. We must accept the vote as certified for Patrick, because it is unquestioned, and that shows that Patrick received a plurality of the votes.

We cannot declare that Patrick was the nominee because he has not been a party to these proceedings. He filed no contest. He accepted the result as certified. The votes cast for him serve no purpose at this time other than to indicate that neither Cooper nor Montgomery received a plurality of the votes. The case of Mellon v. Goble, 210 Ky. 711, 276 S. W. 830, while not exactly in point, is authority for our holding that we cannot declare one nominated to office who is not a party to the contest proceedings, although it may appear that he would have been entitled to the nomination if he had been a party to the contest proceedings.

We have reached the conclusion that the lower court should have adjudged that neither Cooper nor Montgomery was the Republican nominee for sheriff of Magoffin county.

Judgment reversed, and cause remanded, with directions to enter a judgment declaring neither is the Republican nominee for sheriff of Magoffin county.

The whole court sitting.

Judges CLAY, THOMAS and REES dissent to so much of the opinion as holds that Cooper is not entitled to the nomination.