## Kirby v. Creech.

(Decided November 7, 1930.)

J. B. SNYDER for appellant.

B. M. LEE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Correcting and affirming.

In the November election of 1929, the appellant, C. T. Kirby, the appellee, W. C. Creech, and five others, not parties to this suit, W. F. Suttles, M. R. Wolfe, Dewey Hoskins, J. D. Vaughan, and A. J. Lawson, were the candidates for the office of police judge of the town of Loyal, in Harlan county. A. J. Lawson's name was upon the ballot, but he had in fact withdrawn from the race before election day, as the electorate knew. No one of these candidates ran with any political party. Each one had gotten on the ballot by petition, and ran under a device selected by himself. As certified by the election officers, there being but one voting precinct in the town, and by the county election commissioners, Kirby received 107 votes; Suttles, 91 votes; Wolfe, 69 votes; Creech, 66 votes; Hoskins, 58 votes; Vaughan, 19 votes; and Lawson, no votes. These votes make a total of 410. On November 9, 1929, the appellee Creech instituted these contest proceedings against the appellant, Kirby, who, on the face of the returns, had been declared elected. The sole ground of contest relied upon in the petition as amended was that through fraud, oversight, or mistake, the election officers had not correctly counted the ballots, and that on a recount it would be found that Creech had more votes than Kirby. Creech did not make either Suttles or Wolfe a party to this contest, and these two candidates seem to have taken no action to protect whatever rights they had. A recount of the ballots was asked by Creech; it being averred in the amended petition that the ballots were still in the same condition as they were when placed in the ballot box on election night by the election officers. Kirby filed a general demurrer, a special demurrer, and an answer. By his answer, he traversed the allegations of Creech's petition as amended and further pleaded, in abatement of Creech's petition, the fact that he had failed to make Suttles and Wolfe parties to this contest proceeding. Creech filed a reply denying the necessity of making Suttles and Wolfe parties to this

suit. The court, being convinced of the integrity of the ballots, ordered a recount in which it developed that the candidates had, according to the recount, in fact received the following number of votes: Suttles, 140 votes; Wolfe, 78 votes; Creech, 74 votes; Kirby, 67 votes; Hoskins, 22 votes; Vaughan, 9 votes; and Lawson, no votes—total 390 votes. Thus it developed that neither appellant nor appellee had received a plurality of the votes and in fact were the third and fourth men in the race. As neither Suttles nor Wolfe was a party to the suit and had taken no independent action to protect their rights, the trial court held that, as he could not declare the appellee elected, since he had not received a plurality of the votes cast at the election, he would have to declare that no valid election had been held, and he entered a judgment accordingly. From that judgment appellant prosecutes this appeal, and the appellee a cross-appeal.

Appellant first insists that the court, on his special demurrer, or at least on his plea setting up what he claimed to be a lack of necessary parties to the suit, should have dismissed appellee's petition. It would have been much better practice had appellee made the other candidates at this election parties to the suit to the end that on final adjudication the court could have declared who had been elected to the office in question. But it was not indispensably necessary for the appellee to do so. It is settled that a candidate for public office may contest the election of him who has received the certificate of election and show that in fact he was not elected, although such contestant may even by his own admissions in his pleading show or admit that he is not entitled to the office in question. Greene v. Cawood, 230 Ky. 823, 20 S. W. (2d) 984, 985; Francis v. Sturgill, 163 Ky. 650, 174 S, W. 753, 760; McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581. In the Sturgill case, quoting from Cooley's Constitutional Limitations (4th Ed.) p. 787, we said: ''The questions involved in every case are: First, has there been an election? and, second, was the party who has taken possession of the office the successful candidate at such election, by having received a majority of the legal votes cast?''

In the Cawood case, we said: ''A public office does not possess the attributes of private property; so an election contest suit in its essence is not a controversy between parties in the sense of ordinary litigation, but is

in the nature of an inquiry into the purity of the election."

This contention, then, of the appellant, must be disallowed. He next complains of the court's overruling his general demurrer to the appellee's petition. He says that the allegations to the effect that appellee had received more than 66 votes and the appellant less than that number were conclusions and guesses of the pleader, since he could not know what was in the ballot box. If appellant's contention were upheld, no contestant could ever secure a recount of the ballots on the ground of a miscount and an allegation that a recount would show the contestant to have the most votes. So far as the pleading is concerned, appellee in his petition made the unequivocal statement of fact that he had received more than 66 votes and appellant less than that number. How he was able to make that statement is no province of the general demurrer to find out. Some contention is made about the insufficiency of the allegations in the petition concerning appellee's right to be on the ballot, but in Lippold v. Hagner, 226 Ky. 103, 10 S. W. (2d) 619, we held that, where a candidate's name appears on the ballot at a regular election, it will be presumed that the officers whose duty it was to see to the printing and distribution of the ballots did their duty, and that the name of such candidate is legally on the ballot; that, while this is not a conclusive presumption, it is the duty of him who wishes to raise the question of the right of such candidate's name to be upon the ballot to do so, and the burden is upon him to show that such name should not have been upon the ballot. If the appellant wished to raise the question of appellee's right to be upon the ballot, he should have done so affirmatively. His general demurrer did not raise the question.

Coming to the merits of the case, if the integrity of the ballots was established so as to authorize their recount, we must, of course, as indeed appellant practically concedes, conclude that neither appellant nor appellee received a plurality of the votes cast for the office to which they aspired. Appellant's own proof establishes that, after the ballot box was locked at the voting precinct on election night, it was delivered without being tampered with to the county clerk. This clerk testified, as did also his deputy, that this box was kept in his office until brought into court for the recount; that during the last two or three days before that recount it

had been locked up in a steel vault in that office; that prior to that he knew of no one having access to it, nor did he see any signs of its having been tampered with. He admitted that on the night before the recount some one had attempted to break into the county clerk's office, but, if they were successful, there was no evidence that they had gotten into the steel vault, which was locked. On opening the box, the circuit judge found the ballots stuffed very tightly into the envelope designed for them, but, although this envelope had been sealed, the seals were broken. He was of the opinion that the expansion of the ballots had by pressure broken the seals. Some ballots in the county races which should have been in another ballot box furnished for the county races and some school ballots that should have been in the school ballot box were found in this city ballot box where these ballots for the office of police judge had been properly placed. The same election officers had served for all three classes of races that election day, and had been furnished with the three election boxes, and should have placed the different ballots in the particular box to which the particular race they covered belonged. The tally sheet for the city races was found in its proper envelope, but it was blank. The tabulators, two of whom were appointed by the court on the appellant's nomination, had no difficulty in making the recount. It is stated that the ballots on the recount showed no evidence of having been tampered with. That statement is not challenged by the appellant, and he has practically conceded it by not bringing these ballots to this court with the record.

To attack the integrity of the ballots, the appellant introduced all of those who were in the voting place as election officers or challengers and inspectors on election day. They stated that they had counted the vote correctly and so certified it, that they had carefully kept the three classes of ballots separate, and that, if the recount showed the vote to be different from that certified or if any county or school ballots were found in the city ballot box, then this ballot box must, in their opinion, have been tampered with. However, it is shown that the count, if one was had, took place during the twilight hours of the day, which rapidly became the dark hours of the early evening; that it was made by the light of two oil lamps; that no one person did all the counting or all the tallying; that some five or six people took turns about in this work; that in another race, not involved in this contest,

they failed to give a candidate who was in fact the successful one any votes at all. One of the appellee's witnesses testified that he looked through the window and saw those inside just piling the ballots up by handfuls and certifying the vote without making any count. The blank tally sheet in these city races tends to corroborate him. In view of the condition of the ballots when opened; in view of the character of the evidence introduced to establish their integrity; in view of the confused way in which the work of the counting was done, if it was done at all; in view of the mistake, if it was such, in these officers' admitted failure to certify any vote for the candidate who was really successful in the other race we have mentioned; in view of the fact that the recount benefited neither contestant nor contestee but one who could by no means gain by this contest—we are constrained to the view that the trial court did not err in holding that appellant's proof failed to successfully impeach the integrity of the ballots established by appellee's evidence, and that he correctly ordered the recount.

Lastly, it is contended that under section 1596a-12 of the Statutes, this being the one under which this contest is being prosecuted, the court was without power to declare "no election," as there was shown no such fraud, intimidation, bribery, or violence in the conduct of the election as that the court could not determine who was elected. It is plain from the recount that neither appellee nor appellant received a plurality of the votes. This being true, neither one of them could be declared elected. In Cooper v. Montgomery, 230 Ky. 633, 20 S. W. (2d) 479, 481, this precise question was presented in a primary election contest. There the contestant had not made parties to his suit any of the candidates opposing him in the primary election save one. On a recount it developed that one of the candidates, not a party to the suit, received a plurality of the votes. In holding that neither contestant nor contestee could be declared the nominee, we said: "In this jurisdiction, as well as in nearly all others, it is necessary for a candidate to receive a plurality of the legal votes cast in the election before he may be declared the winner in the election. The rule seems to be universal that one receiving less than a plurality of legal votes cannot be declared elected. This rule is sound because the people at large are interested in the election, and in a contest courts cannot ignore the fact that the people are interested, and decide the matter in

such a way as to declare one nominated whom the people did not nominate.''

Although this was a primary election, the decision was based on broad constitutional grounds, which possess all the more force when applied to a general election.

It follows that neither appellant nor appellee was entitled to the office of police judge. The other candidates, and especially Suttles, who really received a plurality of the votes, did nothing to protect their rights, nor did they in time or even at all undertake to assert their rights to the office and to qualify therefor. Hence it necessarily follows that there is a vacancy in the office just as there would have been had Suttles been given the certificate of election and had failed to qualify. Perhaps the language of the judgment of the trial court to the effect that neither appellant nor appellee was entitled to the office and there had been ''no election'' is not quite accurate to the extent that it says there had been ''no election,'' when indeed there had been one, and there was and is no difficulty at all to determine who was fairly elected. Yet, as it reached the same result as it would have done had it used the more accurate expression of there being a vacancy in the office on account of the circumstances we have set out, it will not on that account be reversed.

As so corrected in its wording, the judgment is affirmed.