RENDERED: SEPTEMBER 30, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

## NO. 2022-CA-0803-EL

BRIDGETTE EHLY                                                        APPELLANT

AN ELECTION APPEAL
ARISING FROM OLDHAM CIRCUIT COURT
v.            HONORABLE JERRY D. CROSBY, II, JUDGE
ACTION NO. 22-CI-00246

COMMONWEALTH OF KENTUCKY,
STATE BOARD OF ELECTIONS; AND
COMMONWEALTH OF KENTUCKY,
SECRETARY OF STATE                                                   APPELLEES

AND

## NO. 2022-CA-0878-EL

BRIDGETTE EHLY                                                        APPELLANT

AN ELECTION APPEAL
ARISING FROM OLDHAM CIRCUIT COURT
v.            HONORABLE JERRY D. CROSBY, II, JUDGE
ACTION NO. 22-CI-00246

COMMONWEALTH OF KENTUCKY,
STATE BOARD OF ELECTIONS; AND
COMMONWEALTH OF KENTUCKY,
SECRETARY OF STATE                                                   APPELLEES

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Appellant Bridgette Ehly filed two notices of appeal from orders of the Oldham Circuit Court relative to her petition for a recount of the votes in the May 17, 2022, Republican primary election for the office of State Representative.  Having reviewed the record and the applicable law, we reverse the June 27, 2022, order granting dismissal and remand for a recount.

## I.     FACTUAL AND LEGAL BACKGROUND

Ehly ran against incumbent David Osborne (Speaker Osborne) in the Republican primary for State Representative in the 59th District.  The election returns reflect Ehly received 1,975 votes to Speaker Osborne's 4,164.  On May 26, 2022, Ehly filed in the Oldham Circuit Court a petition for a recount pursuant to Kentucky Revised Statutes (KRS) 120.095.  Ehly named only the Commonwealth of Kentucky, State Board of Elections (the Board) as a party-defendant therein.  However, Ehly alleges she served Speaker Osborne with a copy of the petition and that he did not file an entry of appearance in the lawsuit.  Additionally, the record on appeal reflects the Oldham Circuit Court Clerk served notice of entry of a June 6, 2022, order, in which the circuit court ruled that Ehly "has the statutory right to

request a recount and said recount shall proceed upon the posting of the necessary

bond[,]" upon:

> BROWN, TAYLOR, SCUTCHFIELD, JENNIFER
> SCHWARTZ . . . EHLY, BRIDGETTE, STATE
> BOARD OF ELECTIONS ATTN DANIEL CAMERON.
> COPY SENT TO DAVID OSBORNE X2[.]

The record reflects four separate orders entered by the Oldham Circuit

Court, to wit:

1. On June 6, 2022, following an evidentiary hearing, the circuit court entered an order setting a recount bond pursuant to KRS 120.095(1) in the amount of $21,700.00 and directing Ehly to post the bond within 10 days. The order noted that Ehly "has the statutory right to request a recount and said recount shall proceed upon the posting of the necessary bond." The order recited that it "is final and appealable with no just reason for delay."

In response to this order, Ehly posted a cash bond of $21,700.00 on June 16, 2022.

2. On June 27, 2022, the circuit court entered an order granting the Board's motion to dismiss the petition for failure to join necessary parties to the petition. That order recites, "There being no just cause for delay, this order will become final and appealable upon the issuance of a check to [Ehly] for the balance of the bond posted for the recount."

3. On July 6, 2022, the circuit court entered an order directing the circuit court clerk "to pay out of the bond" Ehly posted the sums of $782.63 and $958.41 which, respectively, "cover[ed] the cost of security and transportation of the voting machines pursuant to invoices tendered by the Oldham County Sheriff's Office and the Oldham County Road's [sic] Department." The court further stated that although it had "elicited

testimony from the Oldham County Clerk's office as to the cost associated with this election recount . . . [u]pon further reflection . . . those services were part of the clerk's regular course of business and therefore not subject to reimbursement." Finally, the order recites: "Pursuant to this Court's prior Order, the invoices have been tendered and after payment of the above expenses, the remainder of the bond shall be refunded to [Ehly]. The Order of June 27, 2022 is final and appealable."

4. On July 28, 2022, the circuit court entered an order denying Ehly's motion to alter, amend, or vacate the orders of June 27, 2022, and July 6, 2022.

Ehly filed two separate appeals: (1) the notice of appeal filed on July 5, 2022, resulted in No. 2022-CA-0803-EL; in it, Ehly appeals from the June 6, 2022, order; and (2) the notice of appeal filed on Monday, July 18, 2022, resulted in No. 2022-CA-0878-EL; in it, Ehly appeals from the June 27, 2022, order and the July 6, 2022, order. As to this second appeal, Ehly explained that the July 6, 2022 order "made the June 27, 2022 Order, final and appealable[.]"

We observe that the Board did not file a cross-appeal regarding the July 6, 2022, order lowering of the bond amount to eliminate the cost of the recount to the county clerk, so the issue as to whether this reduction was appropriate is not before us.

KRS 120.095(2) provides that appeals of recounts of primary elections are governed by the provisions of KRS 120.075. KRS 120.075(1) provides in relevant part that such appeals:

shall be in accordance with the Rules of Civil Procedure, except that the notice of appeal shall be filed and a supersedeas bond executed in the Circuit Court, and the record shall be filed in the Court of Appeals, within ten (10) days after the entry of the judgment, or within such other time as the Court of Appeals may, for cause shown, permit.

## II. Was the Dismissal of the Appeal Warranted?

We first address the Board's arguments that these appeals should have been dismissed because: (1) the first appeal was from an interlocutory order; (2) the second appeal was untimely because the June 27, 2022, order was the final and appealable order; and (3) Ehly failed to post a supersedeas bond.

We agree with the Board that the circuit court's order of June 6, 2022, was inherently interlocutory. It could not be made final and appealable by inclusion of finality recitals under Kentucky Rules of Civil Procedure (CR) 54.02 because it did not adjudicate any claim, nor did it terminate the cause of action. *Craft v. Davidson*, 189 Ky. 378, 224 S.W. 1082 (1920); *Hook v. Hook*, 563 S.W.2d 716, 717 (Ky. 1978). Furthermore, even if the June 6, 2022, order were not inherently interlocutory, Ehly's appeal from that order would have been untimely as it was filed on July 5, 2022, well outside of the statutory time limit prescribed in KRS 120.075(1).

However, we disagree with the Board that Ehly had to appeal from the June 27, 2022, order. There was no need to appeal from this order because it did

-5-

not fully terminate the cause of action.  Instead, the June 27, 2022, order expressly stated that it would become final and appealable upon the occurrence of a future event.  Thus, it was interlocutory.[1]

The July 6, 2022, order disposed of the case.  It was a proper final and appealable order which could be appealed.  Once it was entered, the prior orders could be appealed as being finally adjudicated.  CR 54.02(2).  The second notice of appeal was timely filed on Monday, July 18, 2022, within ten days of the July 6, 2022, order being entered as calculated in accordance with CR 6.01.  *See generally Shackelford v. Barnette*, 445 S.W.2d 449 (Ky. 1969).   Therefore, the June 27, 2022, order is properly before us.

However, as the second notice of appeal did not list the June 6, 2022, order, it is not properly before us.  As the cases were consolidated, it would not be appropriate to dismiss this portion of the appeal, but we decline to consider Ehly's

---

[1] *See, e.g.*, *Campbell v. Hulett*, 243 S.W.2d 608, 610 (Ky. 1951) ("It has been said that if an order entered in a cause does not put an end to the action, but leaves something further to be done before the rights of the parties are terminated, it is interlocutory and not final. . . .  [The question is whether] the lower court intended to terminate the litigation once and for all."); *Jacoby v. Carrollton Fed. Sav. & Loan Ass'n*, 246 S.W.2d 1000, 1001 (Ky. 1952) (internal quotation marks and citations omitted) ("A final order means one where the last say has been said, while an interlocutory order means one that is speaking between."); *Knott v. Crown Colony Farm, Inc.*, 865 S.W.2d 326, 329 (Ky. 1993) (citation omitted) ("An interim or interlocutory order at the trial court level, even one that ultimately proves to be fatal to the outcome of the case, cannot be appealed before the final decision of the trial court disposing of all issues.").  The parties' discussion, in their appellate briefs, of the motion to alter, amend, or vacate is a red herring because Appellant did not attempt to appeal this order, nor could she appeal it as an order denying a CR 59.05 motion is not an appealable order. *Tax Ease Lien Investments 1, LLC v. Brown*, 340 S.W.3d 99 (Ky. App. 2011).

argument regarding the June 6, 2022, order. We also note that Ehly's reasons for appealing this order are largely moot based on the circuit court subsequently lowering the bond amount needed for the recount and our decision that follows.

Finally, we address whether dismissal of these appeals is required due to Ehly's failure to post a supersedeas bond as set forth in KRS 120.075(1). The statute provides that this Court may extend the time for filing such a bond for cause shown. Ehly argues the amount and necessity of the supersedeas bond were unclear given that there is no monetary judgment against her which could be superseded, and considering her having posted the $21,700.00 recount bond pursuant to KRS 120.095(1). Clearly, the amount of the original bond would have been sufficient to secure any damages and costs to the Board on appeal. We hold that payment of an additional amount into circuit court would have been duplicitous and unnecessary. Therefore, we deny the Board's motion to dismiss via a separate order.

### III.    *Were the Necessary Parties Named in the Petition?*

Because we have determined this matter is properly before the Court, we turn now to the merits of Ehly's allegation of error regarding the June 27, 2022, order, that her petition for a recount should not have been dismissed for failure to name necessary parties.

This Court reviews *de novo* the circuit court's granting of a motion to dismiss under CR 12.02:

> When considering the motion, the allegations contained in the pleading are to be treated as true and must be construed in a light most favorable to the pleading party. The test is whether the pleading sets forth any set of facts which -- if proven -- would entitle the party to relief. If so, the pleading is sufficient to state a claim. Since the trial court is not required to make factual findings, the determination is purely a matter of law. Consequently, we review the decision of the trial court de novo.

*Mitchell v. Coldstream Labs.*, 337 S.W.3d 642, 644-45 (Ky. App. 2010) (citations omitted). KRS 120.095 provides, in relevant part:

> (1) Any candidate voted for at a primary held under KRS 118.015 to 118.035 and 118.105 to 118.255 may request a recount of the ballots by filing a petition with the same court that contest petitions are required to be filed with, within ten (10) days after the day of the primary, or, if the candidate is qualified to bring a contest proceeding under KRS 120.055, by including a request for a recount in his or her petition instituting the contest proceedings. Any candidate who is a contestee in a contest proceeding under KRS 120.055 may request a recount in his or her answer filed in the contest proceeding, but in that case the answer shall be filed within five (5) days after the service of process on the petition. When a request for a recount is made, the State Board of Elections or the county board of elections, whichever would issue the certificate of nomination, shall be made a party defendant. The party requesting the recount shall execute a bond with approved surety for the costs of the recount, in an amount to be fixed by the Circuit Judge. Upon the bond being filed, the clerk shall immediately notify the Circuit Judge of the request

and the filing of the bond, and the judge shall at once enter an order directing custody of the voting machines, voting equipment, or voting system, the ballots, boxes, and all papers pertaining to the election to be transferred to the Circuit Court, and fix a day for the recount proceedings to begin. A copy of the order shall be served upon the parties or their counsel in the same manner as notices are required to be served, which shall be deemed sufficient notice of the proceeding. On the day fixed, the court shall proceed to recount the ballots if their integrity is satisfactorily shown and shall complete the recount as soon as practicable, and file and enter of record the results thereof, and direct the state board or county board, whichever would issue the certificate of nomination, to issue a certificate to the party entitled thereto as shown by the recount.

(2) Any party may appeal from the judgment to the Court of Appeals, in the same manner as provided in KRS 120.075, all of the provisions of which statute shall be applicable.

The circuit court dismissed Ehly's petition on the ground that she failed to name therein: (1) Speaker Osborne, who ostensibly received the highest number of votes in the primary; and (2) the Oldham County Clerk.

*A. Is the Winning Opponent a Necessary Party?*

As to Speaker Osborne, the circuit court provided three reasons why he was a necessary party. First, the circuit court found that Speaker Osborne has an interest that could be divested by the recount action, assuming the recount ultimately reflects that Ehly received more votes, *i.e.*, he would lose the nomination, and therefore, Ehly was required to join him under CR 19. Second,

-9-

following Ehly arguing for a lower recount bond amount at an evidentiary hearing, the circuit court stated that Osborne was deprived the reciprocal opportunity to argue for a higher recount bond amount. Third, the circuit court found the General Assembly's use in KRS 120.095 of the phrase "to issue a certificate to the party entitled thereto as shown by the recount" requires that the opposing candidate be a "party" in the recount action.

We agree with Ehly that the circuit court erred in dismissing the petition for failure to name her opponent, Speaker Osborne, because our case law reveals that opponents listed on the ballot are not necessary parties. In *Kirby v. Creech*, 235 Ky. 816, 32 S.W.2d 419 (1930), Creech instituted election contest proceedings against Kirby following the November 1929 election for the office of police judge of the town of Loyal, Harlan County, Kentucky. Kirby appeared to have received the highest number of votes. Creech appeared to have finished fourth, out of seven candidates appearing on the ballot, based on the election returns. However, a recount of the votes revealed that one Suttles had received the most votes, then Wolfe, then Creech, then Kirby. Thus, neither the appellant nor the appellee received a plurality of votes. To make matters worse, "Creech did not make either Suttles or Wolfe a party to [the] contest, and [those] two candidates seem[ed] to have taken no action to protect whatever rights they had." *Id.* at 419-20. Therefore,

-10-

> [a]s neither Suttles nor Wolfe was a party to the suit and had taken no independent action to protect their rights . . . [the trial court] could not declare the appellee elected, since he had not received a plurality of the votes cast at the election, [the trial court] would have to declare that no valid election had been held, and he entered a judgment accordingly.

*Id.* at 419. On appeal, Kirby argued that the trial court should have granted his motion to dismiss the petition "on his plea setting up what he claimed to be a lack of necessary parties to the suit[.]" *Id.* Our then-highest Court held:

> **It would have been much better practice had appellee made the other candidates at this election parties to the suit to the end that on final adjudication the court could have declared who had been elected to the office in question. But it was not indispensably necessary for the appellee to do so**. . . . A public office does not possess the attributes of private property; so an election contest suit in its essence is not a controversy between parties in the sense of ordinary litigation, but is in the nature of an inquiry into the purity of the election.

*Id.* at 420 (internal quotation marks and citations omitted) (emphasis added). *See also Dixon v. Maddox*, 311 Ky. 28, 223 S.W.2d 178, 179 (1949) (observing that in a statutory recount action, "[n]ot only is the proceeding a summary one, but it also embodies some of the elements of a proceeding in rem").

In *Kirby*, 32 S.W.2d at 421, although the trial court's declaration that there had been "no election" was a misnomer, "as there was shown no such fraud, intimidation, bribery, or violence in the conduct of the election as that the court could not determine who was elected," the Court affirmed, holding that "neither

-11-

appellant nor appellee was entitled to the office of police judge." Concerning the appropriate remedy, "[t]he other candidates, and especially Suttles, who really received a plurality of the votes, did nothing to protect their rights, nor did they in time or even at all undertake to assert their rights to the office and to qualify therefor[.]" *Id.* "Hence," the Court said, "it necessarily follows that there is a vacancy in the office just as there would have been had Suttles been given the certificate of election and failed to qualify." *Id.*

In *Brock v. Saylor*, 300 Ky. 471, 189 S.W.2d 688 (1945), in a race for the Republican nomination for magistrate of Bell County, Kentucky, Brock received 261 votes to Saylor's 256. Following a recount by the trial court upon Saylor's petition, Saylor was declared the nominee by a margin of nine votes. Brock appealed, asserting the procedure did not conform to the applicable statute, at that time set forth in KRS Chapter 122. The Court noted that KRS 122.060, the statute then relating to a petition for a recount of the ballots, provided: "A copy of the order shall be served upon the parties or their counsel in the same manner as notices are required to be served, which shall be deemed sufficient notice of the proceeding." *Brock*, 189 S.W.2d at 689. Identical language concerning service and notice appears in our modern-day recount statute, KRS 120.095(1). The *Brock* Court explained:

> It is to be observed that the statutory proceeding
> for a recount of the ballots in a primary election does not

-12-

require that the opposing party shall be summoned, as does the statute relating to the contest. In a recount proceeding the opposing party or his counsel shall be served with a copy of the order directing a transfer to the circuit court of the election paraphernalia and fixing a day for the recount. . . . The purpose of this notice is apparently the same as the summons **although the recount of ballots would appear to be more of an ex parte or summary proceeding than is a contest of an election**, and expedition is of the essence.

*Brock*, 189 S.W.2d at 689-90 (citations omitted) (emphasis added).

In the instant case, the circuit court clerk entered a notation on the docket relative to the June 6, 2022, order, stating that copies were sent to Speaker Osborne. Based on our review of the applicable law, we cannot say that Speaker Osborne was a necessary party to Ehly's petition for a recount or that the required statutory notice was not effectuated.

*B. Is the County Clerk a Necessary Party?*

We next examine whether the Oldham County Clerk was a necessary party to Ehly's petition. As to the county clerk, the circuit court determined she was a necessary party due to her status as the "legal possessor" of the ballots, voting machines, and/or voting equipment. The circuit court ruled that *Maddox* required the county clerk to be named as a party-defendant in any recount action.

We disagree as *Maddox* is clearly distinguishable from the present case. There, the dismissal of the plaintiff's petition for a recount was affirmed because the plaintiff had failed to name the members of the Bell County Election

-13-

Commission therein. The Court held that the members were necessary parties because "[o]nce a recount is completed, the only parties to whom a judge could direct the execution of an order relative to the number of votes casts in the election would be the members of the County Election Commission." *Maddox*, 223 S.W.2d at 179. "These officers are required to issue certain certificates which unquestionably are those referred to in KRS 122.060 [the former recount statute]." *Maddox*, 223 S.W.2d at 179. The Court further emphasized that the plaintiff's naming the opposing party in his petition "could not give the trial judge jurisdiction of the subject matter of the recount, namely the ballots." *Id*. at 180.

There are two salient points here. First, Ehly named in her petition the entity responsible for issuance of the certificate of nomination, the State Board of Elections, in contrast to the faulty petition in *Maddox*. Second, as noted by Ehly, KRS 120.095(1) provides:

> Upon the [recount] bond being filed, the clerk shall immediately notify the Circuit Judge of the request and the filing of the bond, and the judge shall at once enter an order directing custody of the voting machines, voting equipment, or voting system, the ballots, boxes, and all papers pertaining to the election to be transferred to the Circuit Court, and fix a day for the recount proceedings to begin.

Thus, the statute vests the circuit court with the authority and jurisdiction to seize control of the voting paraphernalia. It is unnecessary that the county clerk be

-14-

named as a party to the recount petition in light of this statutory mandate and authority.

We note that in *Brock*, 189 S.W.2d at 690, the Court held that constructive, not actual, possession of the ballot boxes was sufficient to comply with the recount statute, and offering as an example:

> It is not an unusual practice for the court to direct that ballot boxes be placed in a bank's vault for safe-keeping. They are thereby effectually "transferred to the circuit court." We see no reason why the same constructive possession is not acquired if they are left in the custody of the county clerk after the circuit court takes hold of the proceedings.

We also recognize that the circuit court in its June 27, 2022, order, directed the Oldham Circuit Court Clerk to "return[] to the Oldham County Court Clerk as soon as practicable . . . [t]he ballots, papers, voting machines, keys, etc. currently in the possession of the Oldham Circuit Court Clerk[.]"

Therefore, notwithstanding the circuit court's conclusion that it lacked jurisdiction to marshal the voting equipment absent Ehly's naming of the Oldham County Clerk in her petition, the provisions of KRS 120.095 proved sufficient for the circuit court to obtain control of the voting apparatuses, ballots, etc. Accordingly, the county clerk is not a necessary party to a recount action.

For these reasons, we reverse the Oldham Circuit Court's order

dismissing Ehly's petition for a recount for failure to name necessary parties and remand this matter with directions to conduct the statutory recount forthwith.

LAMBERT, JUDGE, CONCURS.

JONES, JUDGE, CONCURS AND FILES SEPARATE OPINION.

JONES, JUDGE, CONCURRING: I concur with the majority's opinion both in substance and result. I write separately simply to explain that so long as the requesting party complies with the procedural requirements of the recount statute and posts a bond sufficient to cover the costs of the recount, the statute requires the recount to be performed. KRS 120.095 ("Upon the bond being filed . . . the judge shall at once enter an order directing custody of the voting machines, voting equipment, or voting system, the ballots, boxes, and all papers pertaining to the election to be transferred to the Circuit Court, and fix a day for the recount proceedings to begin."). The statute does not have any threshold requirements. Specifically, the requesting party does not have to present any prima facie evidence of election irregularity, show that the reported results are within a certain margin, or come forward with voter petitions.

As this case demonstrates, the recount process can stretch out up until the eve of the next election placing a heavy burden on county employees as their limited time and resources are diverted away from other matters to perform the recount. In cases where it seems doubtful that the recount will change the results

of the election, the temptation is for courts to look for a way to avoid having to make officials undergo the burdens associated with performing the recount. However, this is not the job of the courts. Our job is to enforce the statute as written regardless of whether we believe a better one could have been crafted.[2] Such is the case here. Appellant has shown she is entitled to the recount under the statute. We have no choice but to remand and order the recount regardless of any concerns we might have about the burdens it will place on those charged with performing it. Our role in the process, as it has been defined by our General Assembly, is an extremely limited one.

BRIEF FOR APPELLANT:

J. Vincent Aprile II
Louisville, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, STATE BOARD OF
ELECTIONS:

Taylor Austin Brown
Frankfort, Kentucky

---

[2] A survey of other states reveals widely disparate recount statutes. NATIONAL CONFERENCE OF STATE LEGISLATURES, *Election Recounts* https://www.ncsl.org/research/elections-and-campaigns/automatic-recount-thresholds.aspx. Some states have automatic recount triggers but no process for a party to request a recount. About three-fourths of the states have a process for requesting a recount but the requirements vary widely among the statutes. For example, in some states, a court decides whether to grant the request; in others, the request will not be granted if the results do meet the threshold margin, and still other states require a petition signed by a specified number of votes to obtain the recount. Kentucky is among a handful of states with the most liberal recount provisions allowing any candidate regardless of the vote margin to obtain a recount by filing a petition and paying for the costs associated with the recount.